JAMES BRASWELL et ux.

*v.*

C. A. TINDALL.

(*Jackson,* April Term, 1956)

Opinion filed September 3, 1956.

Rehearing Denied October 5, 1956.

W. C. RODGERS, Memphis, for petitioner, Tindall.

Don G. Owens and J. Harold Trinner, Memphis, for respondent Braswell.

Mr. Justice Tomlinson delivered the opinion of the Court.

There was usury to the amount of approximately $975 in the promissory notes which Braswell executed in the principal amount of $2,500, and delivered to one Ben Block Jones. Tindall acquired these notes before maturity. As a defense to Braswell's bill seeking to recover such amount already paid as was usury, and to cancel the last note of $700, all of which was usury, Tindall insists that there is no evidence in the record to overcome the *prima facie* presumption that he is the holder in due course of these notes, Section 47-159, T.C.A.; hence, entitled to collect the face amount thereof, to-

gether with the interest for which they provide, without regard to the fact that these notes were executed and delivered as a result of a usurious transaction.

The same code section, Section 47-159, T.C.A., which provides that every holder of a negotiable instrument obtained before maturity is deemed *prima facie* to be a holder in due course further provides this:

"but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

Tindall did not testify. Nor did he offer any evidence to prove that he acquired title as holder in due course.

The Chancellor, however, observed that in none of our cases "has it been held that usury in a transaction occasioned a defect in title"; hence, that the *prima facie* presumption that Tindall was the holder in due course must apply with the result that Braswell's suit was dismissed. The Chancellor did express the opinion that "usury should so affect the title", but thought that such result should be brought about by legislative enactment.

The Court of Appeals concluded from the evidence

"that Tindall was familiar with the whole scheme and plan, thus taking the notes in bad faith and with full knowledge that same was a pure money-raising usurious transaction."

Accordingly, the Chancellor was reversed, judgment rendered for the amount of usurious interest already paid, and collection of the outstanding note of $700 was permanently enjoined. Tindall's petition for *certiorari*

insists that there is no evidence to support this finding of the Court of Appeals.

This "no evidence" insistence of Mr. Tindall makes necessary a determination first as to whether under our Negotiable Instrument Law the burden was upon Tindall to show that he was a holder in due course before maturity, rather than the burden being upon Braswell to show that he was not such a holder. If there was a defect in title, then Section 47-159, T.C.A., heretofore quoted expressly places this burden upon Tindall, since Braswell has clearly established the grossly usurious transaction.

That which is a defect in title within the meaning of the Negotiable Instrument Law is, as aforesaid, declared by Section 47-155, T.C.A., reading as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this law when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

The question here, then, is whether the obtaining of these notes as a result of a usurious transaction comes within this code section.

This usurious transaction was unlawful. It was by means of such unlawful act that Ben Block Jones acquired title. On principle, therefore, it would seem clear that Ben Block Jones acquired title by unlawful means and for an unlawful consideration; hence, that his title was defective within the meaning of this code section.

The text of 8 American Jurisprudence, section 1028, pages 613-614, in discussing this very question as applied to the Negotiable Instrument Law is as follows:

"* * * And the authorities are generally agreed that where usury in a transaction for which a negotiable instrument is given is proved, the holder has the burden of proving that he was a bona fide purchaser before maturity without notice", citing numerous authorities.

The annotation on this question in 17 L.R.A., page 328, is to the same effect. That annotation, citing many cases in support, is this:

"If the party primarily liable proves fraud or illegality in the inception of the instrument, or if from the circumstances a strong presumption of fraud is raised, the holder must then show that he acquired bona fide for value, under circumstances creating no presumption that he knew the facts which impeach its validity."

The Florida case of *Tucker v. Fouts,* 73 Fla. 1215, 76 So. 130, L.R.A.1917F, 916, 920, is to the same effect.

The Oklahoma case of *State v. Emery,* 73 Okla. 36, 174 P. 770, 773, 6 A.L.R. 234, 239, is exactly the case at bar. That case, after quoting the provision of the negotiable instrument law, with which this opinion is now dealing, to wit, Section 47-155, T.C.A., concludes with the following holding:

"Under the evidence here and under the finding of the court the total consideration for the note in question was usury and illegal. That being true, then, under the statute above quoted, the title of Givens to said note was defective within the meaning of said

statute. And under section 4109, Revised Laws 1910 [48 O.S. 1951 sec. 129], when the title is defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

■ This Court concludes both on principle and persuasive precedent that a promissory note obtained by reason of a usurious transaction falls within Section 47-155, T.C.A., rendering the title defective in the person who thereby acquired it from the maker.

■ Ben Block Jones acquired these notes from Braswell by reason of the usurious transaction mentioned. His title was, therefore, defective. He necessarily negotiated the notes directly to Tindall, or to some one under whom Tindall claims. Since all this was made to appear by the evidence introduced by Braswell, it follows that by reason of the express provision of Section 47-159, T.C.A., heretofore quoted "the burden is [was] on the holder [Tindall] to prove that he, or some person under whom he claims, acquired the title as a holder in due course." As stated, Tindall did not testify, nor offer any evidence. Thus he failed completely in this respect. And having so failed, the Court of Appeals correctly entered against him the aforesaid judgment.

Since that which has just been determined requires a denial of the petition for *certiorari*, it is not necessary to prolong this opinion with a discussion of the evidence by reason of which the Court of Appeals found as a fact that Tindall took the notes in bad faith with full knowledge that they were usurious.

The petition for *certiorari* will be denied.

636

## On Petition to Rehear.

Tindall's petition to rehear categorically asserts that the decision of this Court in this case "is to reverse all" its previous holdings. It cites no decision which, in our opinion, remotely supports this assertion.

Contrary to the statement of the petition to rehear, our decision does not assume that Tindall acquired these notes directly from Ben Block Jones, and does not hold, as the petition asserts, that Jones could not pass *any title* to these notes to a subsequent holder. And the assertion of the petition that "this is not an usurious transaction, and in reality there is no usury in the notes" is contrary to the uncontradicted record.

That record is that in consideration of $200 paid him by Jones' check, and the return to him by Jones of his, Braswell's, notes, then owned by Tindall, and in the amount of principal and interest of $1,357, Braswell delivered to Jones the notes involved in the case at bar amounting to $2,500 principal, and bearing interest from date.

Necessarily, a large amount of the $2,500 principal of these notes was usury. Thus, there was *illegality* in the very inception of these notes acquired by Jones in the original transaction from Braswell, the maker. To deny the existence of such illegality is to deny the existence of that which is obvious.

Under our law, such notes, *while in the hands of such original holder,* are "void or voidable, at the instance of the" maker to the extent of the usury therein. *Bradshaw v. Van Valkenburg,* 97 Tenn. 316, 320, 37 S.W. 88, 89; *Deaton v. Vise,* 186 Tenn. 364, 376, 210 S.W.2d 665. That is, these notes were *defective* to the extent of

the usury therein while *in the hands of the original holder*, Jones, a party to the usurious transaction.

These notes were payable to bearer. They came into the hands of Tindall. Necessarily, then, Jones, the original holder, negotiated them by delivery, 65 C.J.S., Negotiate, page 1273, to Tindall or to some one from whom Tindall claims. It does not matter, in so far as it affects the decision of the determinative question in this case, whether Tindall acquired those usurious, in part, notes directly from Jones or from a transferee under Jones.

Such being the situation, the decision of this Court in this case was that the burden is upon Tindall of proving that he took the notes in good faith and for value before maturity without notice of the defects mentioned; that, having failed to so prove (he offered no proof), it must be held that he took these notes subject to those defects. In addition to the texts and decisions mentioned and quoted, in support of this holding, there might have been named *Taylor v. Goodrich Tire & Rubber Co.*, 20 Tenn. App. 352, 354, 364, 98 S.W.2d 1094; 11 C.J.S., Bills and Notes, sec. 654 e , page 63 et seq. There are no decisions to the contrary, in so far as this Court has been able to find.

Moreover, this Court, as it perceives the matter, could not have reached any different conclusion from the legislative requirement of Section 47-159, T.C.A., as follows: "* * * when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

Tindall's petition to rehear seeks to avoid these decisions and this statute by asserting that a usurious note

is not defective unless "the whole consideration was 'illegal or unlawful' and necessarily voided or destroyed any right or title in the transferee * * *".

The Pocket Part to Volume 11 of Words and Phrases defines the word "defect" as follows: "A 'defect' means an imperfection, flaw, blemish, or fault." A note, the principal amount of which contains some usury is, under our decisions "void or voidable, at the instance of the" maker *to the extent of the usury* therein so long as that note is in the hands of the original holder, a party to the usurious transaction. Thus, to that extent the note, while in such holder's hands, contains as to him "an imperfection, flaw, blemish, or fault"; that is, it is defective as to him within the meaning of the definition, *supra*, in Words and Phrases.

In Words and Phrases, Volume 11, Defective Title, page 562, there is the following statement:

"The exaction of usury on loans for which a negotiable promissory note is executed renders the consideration for said note illegal, *and the title of the person taking such note is defective* within the meaning of section 4105, Rev.Laws, 48 Okl.St.Ann. sec. 125, *to the extent of such usury. Daniels v. Bunch,* 69 Okl. 113, 172 P. 1086, 1088." (Emphasis supplied.)

Principle likewise requires the rejection of the aforestated insistence. To illustrate: The insistence of Tindall is that if all of the principal amount of a note of, say, $1,000 is usury, then that note in the hands of the original holder is defective in title, admits Tindall. But if $100 of that principal was actually received by the borrower, and the remaining $900 is usury, then such note in the principal sum of $1,000 in the hands of the origi-

nal holder, is not defective in title as to him, says Tindall. The very statement of the insistence is, it seems to this Court, its refutation.

■ Finally, the petition to rehear insists that the decision of this Court in this case should apply only where the holder seeks to collect a note "as an aggressor", but "not where the maker attacks" it.

The statute, Section 47-159, T.C.A., heretofore quoted, makes no such distinction. It simply says that "when" it is shown that the title of the person who negotiated the note (Jones here) was defective "the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." To accept petitioner's insistence would amount to an amendment of this statute by judicial fiat.

■ When the maker establishes usury in the transaction "a presumption arises in the maker's favor so that the burden is then on the holder in accordance with the terms of the statute to prove that he or some one under whom he claims was a holder in due course, and his failure to offer any proof to sustain this burden authorizes a finding for the maker." 11 C.J.S., Bills and Notes, sec. 654, pages 54-55.

■ "A presumption is *prima facie* proof of the fact presumed, and unless the fact thus established, *prima facie*, by the legal presumption of its truth is disproved, it must stand as proved." *Washington v. Ryan*, 64 Tenn. 622, 634. By reason, therefore, of the presumption in the maker's favor, usury having been established, it must be concluded that the maker of the note has proved his case, *prima facie*, whether he be aggressor or the defendant. And, the holder, having failed to offer any proof

in contradiction of such *prima facie* case, must be cast in the case, whether he be the one or the other.

■ Braswell, the party primarily liable here, proved illegality by way of usury in the inception of the notes. That being true, a certain duty is placed by law upon the holder of the note, whether he be the complainant or defendant. That duty, if he is not to be cast in the suit, is stated in *National Bank of Commerce v. Chatfield*, 118 Tenn. 481, 493, 101 S.W. 765, 768, 10 L.R.A.,N.S., 801, as follows: " 'If the party primarily liable proves * * * illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder must then show that he acquired bona fide for value under circumstances creating no presumption that he knew the facts which impeached its validity.''

The petition to rehear is denied.