PROVIDENCE A.M.E. CHURCH et al., Appellees, v. HARRY SAUER et al. —323 S. W. (2d) 6.

Western Section. November 21, 1958.

Certiorari Denied by Supreme Court March 12, 1959.

Rehearing on Petition for Certiorari denied by Supreme Court April 8, 1959.

288

Campbell Yerger, Memphis, for Mrs. Sarah Sauer.

W. H. Fisher and A. A. Latting, Memphis, for appellees.

BEJACH, J. This cause involves an appeal by Mrs. Sarah Sauer from a decree of the Chancery Court which purged, as usury, $5,000 from a series of notes aggregating the total sum of $20,000.

The bill in this cause was filed April 17, 1957, by the Providence A.M.E. Church, suing by its pastor and trustees who are: J. C. Miller, Pastor, Edna Forston, Assistant Secretary, L. C. Fulghum, A. L. Mitchell, Robert H. Parrish, Ethel M. Jones, Annie Lue Greer, Grover C. Brown, and James Morris, Trustees, against Harry Sauer and wife, Ida Sauer, sued both individually and as trustees under two deeds of trust, and E. H. Godwin, d/b/a E. H. Godwin and Company. The bill alleged that, acting through its then trustees and officers, under date of February 16, 1952, complainant executed a trust deed to secure bearer in the sum of $20,000, represented by 100 monthly notes, notes 1, 2 and 3 being for $50 each, beginning April 1, 1952; notes 4 to 99 being for $200 each, and one note 100 being for $650, each of said notes bearing interest from date; and that the trust deed which is recorded in Book 2910, page 188, Register's Office of Shelby County, Tennessee, conveyed the church property to Harry Sauer and Ida Sauer as trustees. Reference is also made to an additional note of $2,000 dated June

25, 1952, which was also secured by a trust deed to Harry Sauer and Ida Sauer, trustees, but that note and the trust deed securing same are not involved in this cause. The bill alleged that no money was paid to complainant, but that the proceeds of said notes, to the extent of $11,936.64, were used in discharging obligations incurred in building on the church's property. The bill alleged that 60 of said notes in the total amount of $12,150 have been paid, and that all amounts paid in excess of $11,-936.64 constitute usury, which should be purged from said notes, all notes in excess of said sum cancelled, and the trust deed securing the notes released of record. Complainant seeks to recover all sums paid in excess of $11,936.64. The bill prays for a determination of the just amount due, which complainant alleges a willingness to pay, that all usury be purged from the transaction, that any amount which complainant has overpaid after the usury is purged be recovered by complainant, and that all notes be cancelled together with the trust deed, and released of record, and that if necessary, a reference be had to make, take and state an account between the parties.

Mrs. Sarah Sauer, owner and holder of the notes here involved, who is the mother of the defendant, Harry Sauer, was not made a party to the suit, but she voluntarily entered her appearance herein, filed an answer in this cause, and by an order of court, duly entered, became a party defendant.

Pursuant to another court order, this cause was tried before the Chancellor on oral proof. The proof is not preserved in the record by bill of exceptions, but the Chancellor made an elaborate finding of facts and also

an additional finding of facts which are made part of the record.

According to the Chancellor's finding of facts, the Providence A.M.E. Church had disposed of the church property which it had been occupying and was engaged in the construction of church properties on its newly acquired location at Decatur Street and Overton Park Avenue in Memphis, when it was confronted with the need of funds to complete payment for the newly acquired church lot, to pay bills accumulated from construction, and to finish construction of the church building. In its efforts to raise money, one of the members of the church brought the pastor in contact with Eugene Hibler, a colored real estate agent, who suggested that he might be able to realize $10,000 for the church upon notes in the amount of $20,000 secured by first mortgage deed of trust on the church properties. Through Hibler, the church was brought into contact with the defendant, E. H. Godwin, who undertook to secure $10,000 for the church on the terms proposed by Hibler, and he consulted J. Homer Stone, Jr., a Memphis title attorney, regarding the legal requirements governing the execution by the church of notes in the face amount of $20,000 to be secured by first mortgage deed of trust. Stone advised that authorization was needed from the membership of the church; whereupon, on or about February 13, 1952, Godwin, Stone and Hibler went to a meeting of the membership of the church, at which the execution of $20,000 of notes to net $10,000 was authorized. On or about February 16, 1952, the trustees of the church and the pastor, at the direction of Godwin, went to the office of J. Homer Stone, Jr., where they executed and acknowledged a deed of trust conveying the church properties

to Harry Sauer and Ida Sauer as trustees, to secure $20,000 evidenced by 100 notes, 3 in the face amount of $50 each, 96 in the face amount of $200 each, and 1 in the face amount of $650, all bearing interest at 6% from March 1, 1952, with the first note due April 1, 1952, and the others due and payable monthly thereafter. The trustees of the church, at that time, executed the notes secured by the trust deed and left both notes and trust deeds in the custody of J. Homer Stone, Jr. The information for the drafting of the notes and trust deed was furnished to Stone by Godwin, who advised Stone that a mortgage title guaranty policy would be required. According to the Chancellor's finding of fact, it was known that the church had not been completed. At that time, although Harry Sauer and Ida Sauer, his wife, are named as trustees in the deed of trust, they knew nothing of this transaction, nor of the negotiations incident to same up to that time. It seems that Harry Sauer and Ida Sauer had had previous transactions with the church and it was assumed that they would be willing to act in the capacity of trustees.

It appears that the defendants, Harry Sauer and Ida Sauer, together with Mrs. Sarah Sauer, mother of Harry Sauer, are engaged in the real estate and insurance business in Memphis, Tennessee, incident to which they make collections and have bought promissory notes at a discount, some from defendant Godwin, and that they have been so engaged for approximately nine years. Their operations were principally conducted through a corporation known as D. Sauer & Company, located at 1213 Poplar Avenue, Memphis, Tennessee, Mrs. Sarah Sauer being the president of that corporation and Harry Sauer its secretary and treasurer.

Defendant Godwin approached Harry Sauer and undertook to sell to him the $20,000 of notes executed by the A.M.E. Church for $15,000. According to the Chancellor's finding of facts, Harry Sauer did not, at that time, know that the church had agreed to accept the sum of $10,000 net to it.

On or about March 11 or 12, 1952, Harry Sauer, as agent of his mother, Mrs. Sarah Sauer, after having inspected the church properties, all on the same lot, consisting of a rental unit, a parsonage, and the uncompleted church building, following instructions from defendant Godwin, went to the office of J. Homer Stone, Jr. and delivered to him a check for $14,400 and cash in the amount of $600, totaling the sum of $15,000. At that time, it seems that Harry Sauer inspected the promissory notes, but not the trust deed, and paid the $15,000 to Stone, relying on his assurance that a mortgagee's title policy would be issued by the Commerce Title Guaranty Company; whereupon, the notes here involved were delivered.

The trust deed here involved was recorded March 21, 1952, and beginning March 22, 1952, Stone began disbursing funds in his hands for unpaid accounts and for labor and materials required in completion of the church building. In this connection, the pastor of the church cooperated with him and advised him as to the accounts to be paid. In this manner, Stone disbursed approximately $12,000, although the church was supposed to receive only $10,000 from the proceeds of its notes. It was in this connection that the second mortgage trust deed referred to was executed and a note for $2,000 secured by same was sold to a man by the name of Bluestone for $1,000. This note has been paid, and, as stated

above, is not involved in this cause. The title guaranty policy on the $20,000 trust deed here involved was issued under date of August 6, 1952, but it insured the title against liens and encumbrances as of March 21, 1952, at 2:42 P.M. About $4,000, under instructions from defendant Godwin, was paid by Stone to Godwin and four other individuals. As stated in the Chancellor's finding of facts, "There was no agreement between the church and Godwin of the fee or commission which would be paid for the services of Godwin and his associates, and the church had no knowledge of these payments or the amounts paid." From the Chancellor's finding of facts we quote further, as follows:

"The Court finds that Godwin and his associates were at all times the agents of the church and Harry Sauer was at all times the agent of his mother, Sarah Sauer, and, accordingly, the transaction consummated by the payment of $15,000 to Stone by Harry Sauer was, necessarily a transaction directly but through agents between the church and Sarah Sauer.

"In fact, the proof is conclusive that, as a matter of law, until the payment to Stone by Harry Sauer there was no loan in existence which could have been sold to anyone.

\* \* \* \* \* \*

"The first defense above set forth is answered in the findings of fact hereinabove set forth. The transaction in its inception was usurious."

From the Chancellor's finding of facts we quote further, as follows:

"The Court attaches no importance whatever to Sauer's failure to call for and inspect the resolution of the church authorizing the loan, for that is not considered to be a normal and usual demand or act of a person of Sauer's experience and training. The Court in this case does not consider that the Sauer's inspection of the church property is of any material consequence.

"The Court does not consider the unfinished condition of the premises, or the amount of discount are, by themselves, conclusive of the issue before the Court, though, with other facts, these facts, particularly the unfinished church are 'circumstances to be considered in determining the questions' and 'may be evidence tending to establish it' (bad faith). Bank v. Butler (1904), 113 Tenn. 574, 582-584, 83 S. W. 655.

"The unfinished nature of the Church is considered of importance, for though Mrs. Sauer, acting through her son, was perfectly within *her* own right to take unfinished Church property as security, for Mrs. Sauer to be a bona fide holder of the note, as she claims, there had to be a previous owner of the notes, or she must have believed a previous owner to have existed, and it is somewhat contrary to usual and ordinary business custom and usage for the ordinary investor to invest in uncompleted Church or other type of property.

"The Court on the question before it, does attach critical significance to the fact that Sauer refrained from taking into his possession the deed of trust

securing the promissory notes at the time when he inspected and received the notes. If, in the mind of Sauer, the transaction was a completed transaction as is claimed, ordinary business prudence would have dictated, in the opinion of the Court, that the hair go with the hide, that is, the trust deed with the note.

"Only in the opinion of the Court, could the failure to take the trust deed be excused by the fact that its recordation had not been perfected and that fact would, in the absence of a satisfactory explanation which was not asked but would have been asked by a man of Sauer's experience, have been prima facie proof evident that the transaction was an original transaction between the Church and Mrs. Sauer, through her agent, and necessarily usurious.

"The Court considers that, on this aspect of the case, the defendant holder of the notes has not carried the burden cast by the law, and the bill, for that reason, must be sustained.

"For another reason the bill must be sustained against the holder of the notes.

"In the answers and amended answers of Mrs. Sauer and her son and agent, it is stated:

" 'That the transaction was to purchase the note of $20,000, it being a "package job" from E. H. Godwin for $15,000 and that the $15,000 was paid to the office of J. Homer Stone, attorney, who agreed to and did furnish a title guaranty guaranteeing the title to the note as a first mortgage or lien on the property. *That these defendants relied entirely*

*upon Mr. Stone, attorney, to protect them as to the title and furnish a guaranty'*, etc.

\* \* \* \* \* \*

" 'That for her protection and by agreement, she made the entire purchase price to the office of Stone & Stone, attorneys, requiring and securing, a title guaranty covering the above trust deed as a first lien on the property.'

\* \* \* \* \* \*

" 'That the original purchase of the $20,000 note was made by her on or about March 11, 1952 and she became the owner of the said $20,000 note at the time and as previously set out the purchase for $15,000 was made through the office of J. Homer Stone with the entire consent and approval of complainant.'

"The pleadings above quoted evidence that Stone in the transaction acted as agent for Mrs. Sauer, in addition to his agency for the Church. The proof also sustains that agency of Stone for the holder of the note.

\* \* \* \* \* \*

"Stone knew of the defect in title. Though he may not have had part in planning this usurious transaction, he knowingly executed its details."

Pursuant to a petition of Mrs. Sarah Sauer for additional findings of fact, the Chancellor made further findings that on February 13, 1952, the membership of the Providence A.M.E. Church passed a resolution which authorized the making of a loan to complete the church and expressly authorized a fee of $10,000 for a loan of $20,000; and, that the title policy here involved, being

Number 107984, Commerce Title Guaranty Company, recited:

"For the consideration of $67.50, that it guarantees to Harry Sauer and Ida Sauer, Trustees or the owner or holder of the indebtedness secured by the Trust Deed referred to in Schedule 'A' hereof, the sum of $20,000, effective March 21, 1952 at 2:42 P.M."

The Chancellor's additional finding of facts was filed May 15, 1958, and on the same day, a final decree was entered which dismissed the bill as to defendants Harry Sauer, Ida Sauer, and E. H. Godwin, purged the trust deed and notes here involved of all in excess of $15,000 with interest thereon at 6% per annum from March 1, 1952, less a credit for the 60 notes paid by complainant prior to the filing of the bill, which leaves a balance of $3,450 with 6% interest. (The decree says, "Interest from November 1952", but, obviously this is a clerical error and the interest should run from March 1952). The decree provides that the findings of fact and opinion and the additional findings of fact be made a part of the record of this cause; and also provides that complainants are given 60 days from the entry of the decree within which time to pay the full amount due, and enjoins all further proceedings during that period of time. The decree also contains this provision, "This cause is retained in Court for further orders and decrees enforcing the holdings of this Court."

In his finding of facts and opinion, the Chancellor had said, "If the parties cannot agree on the amounts above indicated to be determined, a reference will be ordered for such purpose."

To that part of the decree purging the debt of alleged usury, the defendant, Sarah Sauer, prayed and was granted an appeal to the Court of Appeals, which appeal she has perfected. As appellant, Mrs. Sarah Sauer has filed in this Court ten assignments of error which are as follows:

"Assignment of Errors

"In accordance with Rule 11(2) Volume I, Tennessee Code Annotated Page 844

"This appeal is limited to that action of the learned Chancellor in purging the debt of alleged usury to the extent of $5,000; in other words, the action of the Court is not appealed from by any party as to the dismissal as to E. H. Godwin and as to the Court finding that Mrs. Sauer is entitled to $15,000 with interest from March 1952; the appeal is limited to the action of the Court in reducing the debt from $20,000 to $15,000 and that decree of the Court and holding of the Court leading up to the decree is error and appealed from. (Tr. pgs. 70-72 inclusive).

"The learned Chancellor erred in his inferences and legal conclusions in his Findings of Fact (Tr. pg. 33) and in his action in reducing the debt from $20,000 to $15,000 as follows:

"I.

"Because the said decree and holding is contrary to the Findings of Fact.

## "II.

"Because the decree and Opinion aforesaid is contrary to the law of the case as applied to the evidence as set out in the Findings of Fact.

## "III.

"Because the learned Chancellor failed to hold that Mrs. Sarah Sauer was a bona fide purchaser for value of the $20,000 in notes involved in this cause. (Tr. pgs. 48-49).

## "IV.

"Because the learned Chancellor erroneously held that J. Homer Stone, Jr. was the agent of Mrs. Sauer and this led on to the Chancellor's error in his final opinion and decree.

## "V.

"Because the learned Chancellor did not correctly apply the principles set out in Hodges v Tindall, 199 Tenn. 638 [288 S. W. (2d) 706].

## "VI.

"Because the learned Chancellor held that the failure of Mr. Sauer, agent for his mother, Sarah Sauer, to pick up the trust deed when he purchased the notes from Godwin, through Stone, put Mrs. Sauer on notice of any and all usury and caused her not to be an innocent purchaser.

## "VII.

"Because the learned Chancellor failed to hold that the Church should be repelled because it vol-

untarily engaged in usury and therefore, an illegal transaction. (Tr. pg. 40).

## "VIII.

"Because the learned Chancellor failed to hold that the Church had ratified the alleged usury and allegedly illegal transaction when it, knowing all the facts, made a second mortgage of $2,000 to take up the shortage. (Tr. pg. 38).

## "IX.

"Because the learned Chancellor failed to hold that the Church did not come into Court with 'clean hands' and under the rules of a court of equity, should be repelled.

## "X.

"Because the lower court failed to hold that the Church should be repelled because of gross laches."

At the outset, we call attention to the fact that, since this cause is before us without a bill of exceptions, we can consider no error predicated on the facts of the case, other than those facts set out in the Chancellor's written finding of facts. We must limit our review to consideration of errors, if any, which appear in the technical record, including the written finding of facts, and we must presume that there was evidence before the Chancellor to sustain his decree. Dept. of Highways and Public Works v. Gamble, 18 Tenn. App. 95, 73 S. W. (2d) 175; Louisville & N. R. Co. v. Brown, 1 Tenn. Civ. A. 269; Duane v. Richardson, 106 Tenn. 80, 59 S. W. 135; Union Bank v. Lowe, 19 Tenn. 225. We think this applies, also, to the Chancellor's finding of facts, which is before us

as part of the record, as well as to the decree itself. In his finding of facts, the Chancellor reviewed, to some extent, the evidence upon which that finding of facts is predicated, but we do not consider that this constituted, nor that he intended for it to constitute, a substitute for a bill of exceptions in which all of the evidence would have been preserved. Indeed, the Chancellor expressly refers to other facts and evidence not set out in his findings of fact; and, certainly, his said findings of fact fail to contain the necessary recital, ''This was all of the evidence in the case.'' Such being our view of the case, the disposition of it becomes quite simple.

▪ ██ As we understand the law of this state, on the subject of usury, no scheme or device to avoid the application of statutes on that subject, however ingenious or intricate same may be, will permit anyone guilty of participating in a usurious transaction to escape its consequences, when the facts are made to appear; and consent or cooperation of the one paying the usurious interest is immaterial. Also, while it is permissible for anyone to buy at a discount negotiable paper which has already been issued, and in the capacity of an innocent purchaser for value and without notice, collect the full amount of such negotiable paper, even though there was usury in its inception (Bradshaw v. VanValkenburg, 97 Tenn. 316, 37 S. W. 88); nevertheless, for this rule to apply, such paper must have been previously in the hands of some other holder from or through whom same is acquired; or, at least, such purchaser must have reasonable grounds for believing that such former holder existed.

██ In the instant case, since the Chancellor has found as a fact that there was no holder of the notes here

involved, prior to the purchase of same by Mrs. Sauer, and that she is charged with the knowledge of that situation, we think that finding of fact is conclusive against the appellant. Furthermore, since the ultimate and determinative question, whether or not Mrs. Sauer is an innocent purchaser for value and without notice, is itself one of mixed law and fact, the adverse finding by the Chancellor of the factual part of that question forecloses her rights as appellant.

In the recent case of Braswell v. Tindall, 1956, 200 Tenn. 629, 294 S. W. (2d) 685, 687, in construing that portion of the negotiable instruments law contained in Sections 47-155 and 47-159, T. C. A., the Supreme Court held that the title to negotiable paper is defective when it originates in a usurious transaction, and that, in such case, "The burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." In that case, C. A. Tindall had purchased paper from Ben Block Jones, who had participated in a usurious transaction at its inception. Tindall offered no proof, and, consequently, it was held that it was proper for the paper in his hands to be purged of usury. From the opinion of the Supreme Court, written by Mr. Justice Tomlinson, we quote as follows:

"(1) This Court concludes both on principle and persuasive precedent that a promissory note obtained by reason of a usurious transaction falls within Section 47-155 T. C. A., rendering the title defective in the person who thereby acquired it from the maker.

"(2) Ben Block Jones acquired these notes from Braswell by reason of the usurious transaction mentioned. His title was, therefore, defective. He necessarily negotiated the notes directly to Tindall, or to someone under whom Tindall claims. Since all this was made to appear by the evidence introduced by Braswell, it follows that by reason of the express provisions of Section 47-159, T. C. A., heretofore quoted 'The burden is (was) on the holder (Tindall) to prove that he, or some person under whom he claims, acquired the title as a holder in due course.' As stated, Tindall did not testify, nor offer any evidence. Thus, he failed completely in this respect. And having so failed, the Court of Appeals correctly entered against him the aforesaid judgment.'' Braswell v. Tindall, 294 S. W. (2d) 685, 687-688.

In the instant case, appellant, Mrs. Sauer, did testify and offered other proof in an effort to carry the burden of proof cast on her by Section 47-159, T. C. A.; but, according to the Chancellor's ruling, she did not successfully carry this burden, and, inasmuch as there is no bill of exceptions before us, we must presume that there was evidence to sustain the Chancellor's ruling. In addition, the Chancellor expressly found as a fact that there was no holder prior to Mrs. Sauer, and that, through her agent, she was charged with knowledge of the usury here involved. The ruling of the Supreme Court in Braswell v. Tindall is, therefore, in our opinion, conclusive against appellant in the instant case.

But, it is insisted on behalf of appellant that the instant case is controlled by the still later decision of the Supreme Court in Hodges v. Tindall, 199 Tenn. 638, 288

S. W. (2d) 706. In that case, the Supreme Court reversed this Court and affirmed the judgment of the Circuit Court which had granted a motion for a directed verdict at the end of plaintiff's proof. From the opinion of the Supreme Court, written by Mr. Justice Swepston, we quote as follows:

"Secondly, the record does not show that the notes were not in existence when Tindall purchased them. It shows only that they were not in existence on the 24th of September 1951, the date of the agent's authority to sell, and that they were not in existence until the 28th day of September. But the date of Tindall's purchase does not appear other than that they were purchased after and whenever Attorney A. M. Robertson had approved the title to the security offered by the plaintiff as collateral to the notes. He denies that Robertson was his agent or attorney.

"The defendant does admit, inferentially, that he examined the real estate offered as security before he purchased the notes, but there is nothing to show that he examined it before the notes came into existence. There is, therefore, no damaging inference to be drawn merely from the fact that he examined the property before he purchased the notes; a purchaser has this right and it certainly would be only ordinary precaution for him to examine the property before buying the notes where the notes depended on the collateral and not on the personal signature of the maker.

"The sum and substance of the defendant's pleas is simply that he never had any dealings with the plaintiff; he never agreed with Comstock to make a

loan; he admits the money raising transaction between the plaintiff and the agent Comstock, but he denies emphatically that he had any such knowledge before he purchased the paper." Hodges v. Tindall, 199 Tenn. 638, 641, 288 S. W. (2d) 706, 707.

■■■■ As we construe the Supreme Court's opinion in Hodges v. Tindall, it is authority only for the proposition that the mere fact that a purchaser of a promissory note secured by a trust deed on real estate examined the property, thus securing the note, before he purchased the note, does not charge him with knowledge that the sale of the note was part of a money raising transaction. Furthermore, in that case, it having been disposed of on a directed verdict, it was held that the plaintiff had failed to prove the necessary elements of her case. In the instant case, not only did the evidence establish that the purchaser, Mrs. Sauer, through her son and agent, Harry Sauer, examined the property which secured the notes here involved, prior to purchase of same, but, also, that his examination disclosed, at that time, that the church thereon was uncompleted. It is true the Chancellor said in his opinion, "The Court does not consider the unfinished condition of the premises, or the amount of discount are, by themselves, conclusive of the issues before the Court, though, with other facts, these matters, particularly the unfinished church, are 'circustances to be considered in determining the questions', and, 'may be evidence tending to establish it' "; nevertheless, aside from the "other facts" referred to by the Chancellor, we cannot believe that the Chancellor was no naive as to award complete credibility to the testimony of Mr. Sauer that he regarded the property, even with the church in its unfinished condition, as ample security for the notes

which he was purchasing for his mother. Since there is no bill of exceptions preserving the evidence with reference to the "other facts" referred to by the Chancellor, we must conclusively presume that there was evidence of such "other facts"; and the finding of facts as made by the Chancellor is conclusive against appellant, Mrs. Sauer.

In view of what we have said above, we deem it unnecessary to take up and discuss separately the assignments of error which are quoted above. Suffice it to say, that we consider all of them to be without merit, and all of them are overruled. It results that the decree of the Chancellor must be affirmed. A decree to that effect will be entered here, after which this cause will be remanded to the Chancery Court of Shelby County, Tennessee, for such further orders and decrees enforcing the Chancellor's decree and that of this Court as may be necessary or proper, and for such reference or references, if any, as the Chancellor may see fit to order. The costs will be adjudged against the appellant, Mrs. Sarah Sauer and the surety on her appeal bond.

Avery, P. J. (Western Section), and Carney, J., concur.