SILVER HOMES, INC., et al., Appellees.

*v.*

MARX & BENSDORF, INC., Appellant.

(*Nashville,* December Term, 1959.)

Opinion filed March 11, 1960.

ROSENFIELD, BOROD, FONES & BOGATIN, Memphis, for appellant.

MARTIN, TATE & MORROW, Memphis, for Silver Homes, Inc. and Houston C. Gann and wife.

WHITE, GULLETT, PHILLIPS & STEELE, Nashville, amicus curiae, representing Tennessee Mortgage Bankers Association.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is an appeal from the Chancellor's decree pronouncing a declaratory judgment in a suit commenced by a bill which states a justiciable controversy between complainants and defendant. The memorandum opinion of the Chancellor succinctly states the determinative question as follows:

"This is an original bill for a declaratory judgment to determine whether a loan, insured by the Federal Housing Administration, requiring 5¾% interest, plus an additional annual insurance premium of ½ of 1%, and providing for an adjusted prepayment charge of 1% of the original principal is in violation of the usury statutes (T.C.A. [secs.] 47-1603 and 47-1604) of Tennessee."

The question arose in September 1959 by reason of the action of the Commissioner of the Federal Housing Administration in at that time ordering the increase of interest on F.H.A. Home Loans to 5¾% per annum. The purpose of the order was to enable F.H.A. insured mortgages to meet the competition in the mortgage market in inducing permanent purchasers of interest bearing secured mortgage notes to purchase such F.H.A. mortgage loans.

From the decree of the Chancellor adjudging such a loan not to be in violation of the usury statutes of Tennessee, the defendant, Marx & Bensdorf, Inc., has appealed. Marx & Bensdorf is a Tennessee corporation with principal office at Memphis. It is engaged in the business, among others, of making on a large scale F.H.A. insured mortgage loans to home owners. It elected to stand on its demurrer which the Chancellor had overruled. By that demurrer it insisted that the face of the

deed of trust securing such loans discloses a violation of the usury statutes of Tennessee.

■ Title 47-1603, T.C.A. defines interest on a loan of money to be "the compensation which may be demanded by the lender from the borrower * * * for the use of money". The next code section limits the amount of such compensation to "six dollars ($6.00) for the use of one hundred dollars ($100.00) for one (1) year". That code section then provides that "every excess over that rate is usury". If such usury appears upon the face of the mortgage instrument the obligation to repay any part of the loan is unenforceable. *White v. Kaminsky,* 196 Tenn. 180, 185, 264 S.W.2d 813.

The obligation of the borrower of an F.H.A. loan to pay the 5¾% interest plus the annual insurance premum, plus the adjusted prepayment charge appears upon the face of a Tennessee deed of trust conveying realty to secure an F.H.A. loan. Therefore, if the loan is made usurious by either of these requirements, then such F.H.A. loan is unenforceable in so far as it is governed by the law of Tennessee.

■ As aptly said in the Chancellor's opinion, under Tennessee law the compensation which the lender of money may legally demand is determined "not by what the borrower pays but what the lender receives. *Jenkins kins v. Dugger* [6 Cir., 1938] 96 F.2d 727 [119 A.L.R. 1484 [cert.] den. 306 U.S. 623, 59 S.Ct. 84, 93 [83] L.Ed. 398".

■ Equally as well settled a principle of Tennessee law with reference to the usury statute is that

"'* * * 'expenses incident to making the loan and furnishing the lender satisfactory security for its repayment can in no sense be considered compensation for the use of the money loaned.' " *Koen v. State,* 162 Tenn. 573, 581, 39 S.W.2d 283, 285.

These applicable rules with reference to usury being well settled, in so far as Tennessee law is concerned, the first question which arises is as to the origin, nature and purpose of this additional annual insurance premium of one-half of 1%.

The National Housing Act, 12 U.S.C.A. sec. 1701 et seq., is a statute of the United States Congress. It resulted from very sub‑standard housing conditions throughout the nation following the 1932 depression. The conventional loan then, as now, made by investors in mortgage loans was, generally speaking, only about 50% —sometimes a little more—of the value of the residence, or other realty, to be conveyed by trust deed to secure repayment of the loan. Very many people throughout the nation—and to the point of its becoming a matter of serious congressional concern—could not, and cannot, qualify for such a loan for lack of sufficient additional funds to expend in the procuring of a proper home. Clearly, one of the controlling purposes of the National Housing Act is to make it reasonably possible for persons with quite limited capital to finance the acquiring of such homes.

Congress knew, and it must be so presumed, that its purpose of making ownership of homes available to such people could not be accomplished unless it worked out a plan whereby (1) a very small amount of capital would be required of the proposed home owner as one of the

conditions precedent to procuring a loan sufficient in amount to acquire the home, and (2) furnishing security sufficient to satisfactorily guarantee the repayment of the loan to the end that such loans would attract permanent mortgage investors, and (3) spreading out repayment of such loans at stated (monthly) periods under the amortization plan over a sufficient number of years to make compliance with the required amount of such repayments come within the reasonable ability of the borrowing home owner.

In accomplishment of the aforesaid purposes, the National Housing Act and the authorized rules and regulations of its agent, the Federal Housing Administration, headed by a commissioner, (1) guaranteed the repayment of the loan and interest by the United States Government, and (2) provided that a borrower, in so far as money is concerned, be accepted for an F.H.A. loan if such borrower should furnish from individual funds 3% of the cost price of a home costing up to $11,000 and larger, but small percentages of the cost price of homes costing in excess of such sum. The balance of the cost price is then furnished by the lender because its repayment is guaranteed by the United States Government through its agent, the F.H.A.

To meet its commitment guaranteeing the repayment of F.H.A. loans upon which a borrower might default, Congress created a Mutual Mortgage Insurance Fund and initially contributed ten million dollars thereto. And in consideration of its securing the repayment of the mortgage the Act authorized the commissioner of F.H.A.

"to fix a *premium charge* for the insurance of mortgages * * * not less than an amount equivalent to one-

half of 1 per centum * * * nor more than an amount equivalent to 1 per centum per annum of the amount of the principal obligation of the mortgage outstanding at any time, without taking into account * * * prepayments * * *. Such premium charges shall be payable by the mortgagee * * * in such manner as may be prescribed by the Commissioner. * * *'' Title II (12 U.S.C.A. #1709 (c))

The commissioner has fixed this annual insurance premium charge at ½ of 1% ''of the principal obligation of the mortgage outstanding at any time, without taking into account * * * prepayments * * *.'' The Tennessee F.H.A. deed of trust provides that the mortgagor shall pay this premium charge to the mortgagee on a monthly basis. The mortgagee, in turn, annually pays over such collections to the F.H.A. The insistence of the appellant is that the exaction from the mortgagor of this insurance premium charge plus the exaction of 5¾% annual interest makes the transaction of a violation of the usury statute of Tennessee, and voids the obligation to repay, since such requirements appear upon the face of the trust deed.

It is a fact that Section 1709(c) above quoted says this: ''Such premium charges shall be payable by the mortgagee * * * in such manner as may be prescribed by the Commissioner * * *.'' However, Administrative Rule and Regulation No. 221.21 provides this:

''* * * (a) the mortgage may provide for monthly payments by the mortgagor to the mortgagee of an amount equal to one-twelfth of the annual mortgage insurance premium payable by the mortgagee to the Commissioner.''

So, as observed by the Chancellor, the regulations indicate that F.H.A. expected this premium charge to be passed on to the borrower. The lender collects this insurance premium from the borrower each month. Under certain conditions, upon the payment in full of a given loan, if the Commissioner deems it equitable to refund any part of such paid in insurance premium the refund is, under the Federal Statute, made to the borrower, but never to the lender. Very large amounts, in the aggregate, have been refunded to Tennessee borrowers, their loans having been fully paid.

The brief of one of the appellees calls attention to a ruling of the Internal Revenue Department "I. T. 3062 CB Dec. 1937-1, at page 61" that the mortgagor payment of this F.H.A. mortgage insurance premium is not deductible as interest in computing federal income tax.

 It is an indisputable fact that the liability to pay such insurance premium is due solely to a plan whereby a borrower with very little available money will be enabled to procure a loan sufficient to acquire a reasonably adequate home. There is no gainsaying the statement that the plan is for the sole benefit of the borrower. This insurance premium is solely an expense incident to the necessity of furnishing the lender satisfactory security for the repayment of the money loaned for that purpose. The well settled law in Tennessee is that

"* * * 'expenses incident to making the loan and furnishing the lender satisfactory security for its repayment can in no sense be considered compensation for the use of the money loaned.' " *Koen v. State,* 162

Tenn 573, 581, 39 S.W.2d 283, 289. (Emphasis supplied.)

The payment, therefore, of such an expense by the borrower cannot be regarded as a payment of interest to the lender for the use of money loaned. See Sec. 47-1603, T.C.A. Though it is money which the borrower pays, it is not money received for the use of the lender. So, it is not interest within the meaning of our usury statute. *Jenkins v. Dugger,* supra.

Therefore, the F.H.A. loan does not violate the usury laws of Tennessee unless usury results from the provision in the deed of trust that if the loan is fully repaid prior to maturity there shall be paid by, in effect, the borrower, in one sum an adjusted premium charge of one (1%) percent of the original principal, but never to exceed the aggregate amount of the annual insurance premium of one-half of 1% which would have been payable if the mortgage had continued to be insured until maturity.

 The brief of appellants frankly concedes "that the majority of jurisdictions which have passed on prepayment charges, either of unearned interest running to the maturity date stipulated, or of a sum expressed in a prepayment option, not exceeding interest to the maturity date, have held that such transactions are not usurious. (Annotation 130 A.L.R. 73)" In so far as our search reveals only one state seems to hold to the contrary.

The text of 91 C.J.S. Usury sec. 31, page 610, is as follows:

"A provision in a note or contract for the payment of money permitting the payment of the principal sum before its maturity at the debtor's option, on payment of interest to the date of the payment and a bonus in addition, * * * does not render the transaction usurious."

Attention is directed to the fact that the 1% adjusted premium charge can never exceed the amount of annual insurance premium of one-half of 1% which would have been payable by the borrower had he not elected to repay the loan prior to the absolute maturity date specified in the trust instrument. Perhaps, therefore, applicable to the principle involved, is the text statement in 55 American Jurisprudence, page 360, that the loan is not made usurious

"If the total interest received by the lender does not exceed the interest computed at the maximum lawful rate from the time the loan became available to the borrower to the absolute maturity date specified in the contract."

About as logical and "to the point" a statement as this Court has found upon the question is that of the appellate division of the New York Court in its case of *Feldman v. Kings Highway Savings Bank,* 278 App.Div. 589, 102 N.Y.S.2d 306, 307, 303 N.Y. 675, 102 N.E.2d 835, a case cited in the brief of Amicus Curiae. There the lender agreed to the borrower's request to be allowed to prepay the $15,000 loan on condition that an additional $2,000 be paid as a "prepayment privilege charge". In rejecting the borrower's suit for recovery of the $2,000 on the assumption of usury, the Court held:

"The prepayment was not under coercion, or duress, but was voluntary. * * * It was * * * the making of a new and separate agreement, the termination of the indebtedness. Accordingly, it was not a payment of interest and therefore could not be the basis of a claim of usury."

It is this Court's opinion, based on principle and precedent, that a mortgage loan bearing 5¾% per annum is not in violation of the Tennessee usury statute in requiring of the borrower (1) payment to the F.H.A. of an insurance premium as a means of procuring a guarantee by F.H.A. of the repayment of the loan made to such borrower for the acquiring of a home, or (2) payment to the F.H.A. of an adjusted prepayment charge based upon the obligation to pay such insurance premium for the privilege of prepaying the loan. The borrower alone is the beneficiary of these two provisions required by the United States Government in consideration of extending its aid in the respects mentioned to such borrower. Never does the lender receive any part of these required payments which are necessary expenses incident to making the loan. Such lender receives only the 5¾% annual interest. Receipt of 5¾% annual interest is less than the 6% permitted by the Tennessee statute.

The decree of the Chancellor will be affirmed.