**AZTEC PROPERTIES, INC., Appellant,**

v.

**UNION PLANTERS NATIONAL BANK OF MEMPHIS, Appellee.**

Supreme Court of Tennessee.

Oct. 27, 1975.

Larry D. Austin, Pete Sisson, Sisson, McWhirter, Lowrance & Austin, Memphis, for appellant.

Edward P. Russell, Jr., Robert M. Johnson, Canada, Russell & Turner, Memphis, for appellee.

## OPINION

BROCK, Justice.

This is an action to recover on a promissory note. The facts are stipulated.

On July 12, 1974, Aztec Properties, Inc., executed a promissory note payable to Union Planters National Bank of Memphis in exchange for a $50,000.00 loan. The promisor agreed to pay the promisee $50,000.00, "in constant United States Dollars adjusted for inflation (deflation)" with interest at ten percent per annum. The adjusted principal was to be calculated according to a formula contained in the note, to wit:

"Amount of principal due shall equal the amount of original principal multiplied by the consumer price index adjustment factor. This adjustment factor shall be computed by dividing the consumer price index at maturity by the consumer price index on date of borrowing. Said consumer price index numbers shall be for the most recent month available preceding borrowing and maturity dates. This consumer price index shall be the index not seasonably adjusted for all items as reported by the United States Department of Labor."

On maturity of the note Aztec Properties repaid to the bank $50,000.00, with discounted interest at the rate 9.875 percent, in the amount of $419.35 (which is an effective yield of 9.96% per annum), but the borrower refused to pay the additional "indexed principal" of $500.00, based on the inflation adjustment formula.

Whereupon, the bank sued Aztec Properties in Chancery Court for the "indexed principal" together with interest from maturity at the rate of ten percent per annum. Both parties filed Motions for Summary Judgment, the Chancellor holding in favor of the bank. Aztec Properties now appeals to this Court alleging that the Chancellor erred in granting the bank's Motion and in denying its own.

The first issue to be resolved is whether this note is usurious, i. e., whether it charges interest in excess of the legal rate of ten percent per annum. T.C.A. § 47–14–104. A defendant sued for money may avoid the excess over legal interest, by a plea setting forth the amount of the usury. T.C.A. § 47–14–112. Interest includes *all* compensation for the use of money. "Any payment to the lender in addition to the rate of interest legally permissible, whether called by the name of bonus or commission or *by any other name,* is usurious." (Emphasis added.) *Restatement, Contracts,* § 526. Compensation is determined not by what the borrower pays but by what the lender receives; thus, if the borrower is the beneficiary of a payment it will not be interest. *Silver Homes, Inc. v. Marx & Bensdorf, Inc.,* 206 Tenn. 361, 333 S.W.2d 810 (1960). Nor are expenses incident to making a loan and furnishing the lender with satisfactory security for its repayment compensation or interest. *Silver Homes, Inc. v. Marx & Bensdorf, Inc., supra.*

The note executed by Aztec Properties bears ten percent interest on its face; that interest has been paid and is not in issue

here. The borrower claims that the "indexed principal" constitutes additional interest. The bank argues that the "indexed principal" equals the difference in value between the principal lent and returned, and is not extra compensation.

There being no Tennessee case law directly on point, both parties attempt to analogize the long series of "exchange of money" cases.

One of the earliest of these cases was *Lawrence v. Morrison*, 9 Tenn. 444 (1830). In that case the borrower gave a note to Sullivan for $607.87½ in Tennessee bank notes, payable on December 25, 1825. Sullivan assigned the note to Lawrence. On December 24, 1825, the borrower executed a second note in exchange for the first note for the same sum payable in gold and silver on August 1, 1825 [sic]. After the second note fell due a suit was instituted to which the borrower plead usury averring that that $607.00 in bank notes was worth only $456.00 specie. The Court set guidelines for determining usury:

> "A jury in trying the case before us would . . . first enquire what was the value of the bank notes on the day the second note was given. If the sum found, compared with the amount of the note given for specie, fell so far short as to show that more than the rate of six per cent. per annum had been reserved, they might then infer that the whole amount was a device to cover usury. . . . In short, it would be for the jury to ascertain whether under all the circumstances, it was intended by the parties under color of supposing depreciated paper equal to specie, to cover a corrupt bargain against the statutes concerning usury." Id. at 446.

In *Weatherhead v. Boyers*, 15 Tenn. 545 (1835), Weatherhead borrowed a sum in Tennessee bank notes from Boyers and agreed to repay an equal nominal amount in specie or notes on the Bank of the United States. The latter were equal to gold or silver while the former were greatly under

par. The Court looked beyond the devices and disguises of the parties to the substance of the transaction and found usury.

The Court reached the opposite result in *Turney v. State*, 24 Tenn. 407 (1844). In that case a contractor with the post office had an arrangement with the bank whereby he deposited eastern funds and gold and silver and received Tennessee bank notes of equal face value in exchange. The later were only worth 92–93% of the former. The contractor also had the privilege of borrowing additional money from the bank up to twice the amount of his funds. Although the difference in value between the eastern funds and specie, on one hand, and the Tennessee bank notes, on the other, exceeded the legal maximum interest at that time (6%), the Court found no usury because the parties had no corrupt intentions. It pointed out that the notes received by the contractor "were notes of specie-paying banks, as sound or available, perhaps, to him and to others, in ordinary transactions, as eastern funds." Id. at 409.

The Court in *Turney v. State, supra*, relied heavily upon *United States v. Waggener*, 9 Pet. 378, 9 L.Ed. 163 (1835). In *Waggener*, the borrower executed a promissory note for $5,000.00 and 6% interest per annum payable to the Bank of the United States in exchange for which he received $5,000.00 in Kentucky bank notes. At the time of the loan the Kentucky bank notes were circulating at a rate of thirty-three to forty percent depreciation below their nominal amounts. In response to the claim of usury the United States Supreme Court stated, "to constitute usury within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement." Id. at 171. The Court concluded that the loan in *Waggener* was not per se illegal because the Kentucky bank notes might have been worth more to the parties than their marketable value at the time of the loan. If the parties bona fide estimate

equivalent values in the credits or commodities they are exchanging, there is no usury, said the Court.

In *Hamilton v. Moore*, 26 Tenn. 35 (1846), the complainant borrowed a sum of money in Alabama bank notes and sometime afterwards bound himself by a bill single to repay the face value of the loan in Tennessee bank notes. He later claimed that the bill single was usurious because Alabama bank notes were worth less than those of Tennessee. The parties agreed that they did not intend to commit usury and that the borrower said at the time that Alabama notes would be as valuable to him as Tennessee money. The Court relying on *Turney v. State, supra*, found no usury. It stated that "usury is not an inference of law, to be drawn from the mere inequality of value between the currency loaned and that stipulated to be paid for it, but, on the contrary, is a question of intention, to be made out by the proof of facts." Id. at 36.

In *Finley v. McCormick*, 53 Tenn. 392 (1871), the complainant lent the borrower $200.00 in gold, $150.00 in silver, and $200.00 in greenbacks or United States currency, and the latter agreed to pay back the gold and silver or to pay $1.50 for every dollar in gold, and the difference in value of silver. The borrower argued that this was usurious. The Court concluded that it could "not judicially know the value of 'greenbacks,' so called, and for ought that appears on the face of the bill, the parties may have fairly estimated the difference in value between them and gold and silver, and the contract is, *prima facie*, lawful." Id. at 394.

Finally in *In re Mansfield Steel Corporation*, 30 F.2d 832 (E.D.Mich.1929), a Canadian resident lent a Michigan corporation $88,000.00, primarily in Canadian money. The corporation in exchange executed a promissory note for that amount in American funds plus the maximum legal interest in Michigan. At the time of the loan Canadian money was worth less than American money, but the parties anticipated they would be at par by the time of repayment. Evidence of the parties' expectations was an important factor in the court's decision that they lacked the intention to lend money at usurious interest.

In our view these cases are fundamentally different from the case under consideration here. With the exception of the last case all occurred in a very particular historical context; they were decided at a time when different kinds of money with different values were in circulation. Faced with the problem of the interchange of this money the court concluded that usury should be ascertained according to the parties' intentions; thus, when the moneys exchanged pursuant to a loan are *different in kind* but *equal in value* in the honest judgment of the parties, the courts will not assume that a difference in their market value is hidden interest. It is important to note that except for *Mansfield, supra*, equality of value was evaluated in these cases as of the time of the loan or agreement to repay; in no case was the sum owing adjusted at the time of repayment according to fluctuations in value of the principal after it was lent. And in *Mansfield* the parties merely considered the projected fluctuation in value of the currency of repayment, not appreciation or depreciation in value of the principal loaned.

We have found no case holding that an intentional increase in the face value of the principal to account for inflation does not constitute interest. In practice the lender has long borne the risk of inflation in this state. The interest charged by a lender is not profit, strictly speaking, but compensation for the use of money and for bearing the risk that the borrower might not repay or the principal might depreciate in value. We accordingly hold that the "indexed principal" constitutes usurious interest.

The next question raised is whether the defense of usury, provided in T.C.A. § 47–14–112, is available to *corporate* borrowers. The usury statutes of many states exempt corporations from their protection.

See Hershel Shanks, *Practical Problems in the Application of Archaic Usury Statutes*, 53 Va.L.Rev. 327 at 346 et seq. (1967). Tennessee, however, has never adopted such a statute nor have its courts recognized a corporate exclusion. But the Bank argues that the Legislature has granted corporations organized under Tennessee law the right to borrow at whatever interest rate they choose. T.C.A. § 48–402 provides:

"Each corporation shall have power:

"(g) To make contracts and, subject to such limitations, if any, as may be contained in the charter, to incur liabilities, *borrow money at such rates of interest as the corporation may determine*, issue its notes, bonds and other obligations, and secure any of its obligations by mortgage, pledge or otherwise." (Emphasis added.)

In our opinion this statute merely enables corporations to borrow money at such rates as are *permitted by law*. The Legislature has no power to authorize corporations to lend or borrow at any interest rate exceeding the uniform and equal rate fixed by general law. *McKinney v. Memphis Overton Hotel Company*, 59 Tenn. 104 (1873). Nor can this rate exceed ten percent per annum. *Constitution of Tennessee*, Article 11, § 7.

■ Aztec Properties executed a written waiver of the defense of usury at the time the note was signed, and the Bank relies upon this waiver. We find no merit in this argument because the consent or cooperation of the one paying the usurious interest is immaterial. *Providence A. M. E. Church v. Sauer*, 45 Tenn.App. 287, 323 S.W.2d 6 (1958).

Even if the "indexed principal" were not considered to be interest, we are of the opinion that as employed in this case the device of an "indexed principal" could not withstand analysis under the Joint Congressional Resolution of June 5, 1933, popularly referred to as the "Gold Clause" Resolution.

Congress made its intention extremely clear in this resolution, in which it stated:

"Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts." 31 U.S.C.A. § 463.

■ We are not concerned in this case with the exchange of currencies upon an international market, nor does the case involve the sale of any commodity. In this case a domestic customer borrowed funds from a national bank in a principal amount expressed in and repayable in United States dollars. It would be contrary to the national policy, as expressed by the Congress and as interpreted in several cases by the United States Supreme Court, to permit a lender to require of a borrower a different quantity or number of dollars from that loaned, insofar as the principal amount is concerned. In *Guaranty Trust Company, Trustee v. Henwood, Trustee et al.*, 307 U.S. 247, 252, 59 S.Ct. 847, 850, 83 L.Ed. 1266 (1939), the United States Supreme Court said:

"Having thus unmistakably stamped illegality upon both outstanding and future contractual provisions designed to require payment by debtors in a frozen money value rather than in a dollar of legal tender current at date of payment, Congress—apparently to obviate any possible misunderstanding as to the breadth of its objective—added, with studied precision, a catchall second sentence sweeping in 'every obligation', existing or future, 'payable in money of the United States', irrespective of 'whether or not any such provision is contained therein or made with respect thereto.' The obligations hit at by Congress were those 'payable in money of the United States.' All such obligations were declared dischargeable 'upon payment, dollar for dollar, in any coin or currency [of the United States]

which at the time of the payment is legal tender for public and private debts.'"

See also *Norman v. Baltimore & Ohio Railroad Company*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); *Holyoke Water Power Company v. American Writing Paper Company*, 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1937).

Accordingly, even if the reserved interest in the present case were only five percent, or some other rate clearly free from any question of usury, we are of opinion that a national or state banking institution would not be authorized to "index" the principal amount of money loaned to a domestic customer on a promissory note, so as to vary the number of dollars which may be required to be paid in satisfaction of the debt.

It is recognized, of course, that "indexing" is a current and very legitimate concept in modern business transactions. Nothing in this opinion should be taken to suggest that there is an impropriety in measuring future rentals by a consumer price index, or some comparable standard, in leasing agreements. Nor is there anything improper in computing future wages or salaries by such an index in collective bargaining or employment contracts. As long as there is a national currency, however, which by law is legal tender for the payment of public and private debts, we hold that the indexing device cannot properly be applied to the principal of a debt evidenced by a promissory note payable in that currency.

Accordingly, the judgment of the Chancellor is reversed, all costs taxed against the appellee, Union Planters National Bank of Memphis.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.

OPINION ON PETITION TO REHEAR

The appellee has filed a petition to rehear which the Court has considered but found to be without merit. Accordingly, the petition to rehear is denied at the cost of the appellee.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.