AVERY v. J. L. HUDSON COMPANY

1. CONTRACTS—INTERPRETATION—EVIDENCE—EXTRINSIC EVIDENCE.
   Extrinsic evidence may be adduced to establish the intent of
   the parties to a contract evidenced by a writing only if the
   meaning of the written language is obscure.

2. CONTRACTS—INTERPRETATION—OPERATIVE TERMS.
   The language of a contract may be interpreted by defining the
   operative terms and paraphrasing the contract wording ac-
   cordingly.

3. CONTRACTS—LEASE—METHOD OF PAYMENT—INTERPRETATION.
   Provision in a 1912 lease requiring payment in "legal tender
   * * * of equal purchase power with the present monetary
   standard of the United States" *held,* to require payment in
   dollars whose value is equal to that of 1912 dollars as measured
   by the gold content of the 1912 dollar rather than by the
   amount of goods and services that could be purchased with a
   1912 dollar, where there were no adjustments for over 50
   years after the lease was executed, and where the lease made
   no references to price indexes or other standards by which
   changes in the cost of living could be computed and made no
   provision for periodic adjustments.

Appeal from Wayne, Theodore R. Bohn, J.  Sub-
mitted Division 1 March 5, 1969, at Detroit.  (Docket
No. 5,515.)  Decided May 28, 1969.

Complaint by Waldo A. Avery, Jr., and Robert
N. Avery, successor trustees, and Alra Avery

REFERENCES FOR POINTS IN HEADNOTES
[1]  17 Am Jur 2d, Contracts § 241.
[2, 3]  17 Am Jur 2d, Contracts § 247 *et seq.*; 30 Am Jur 2d, Evidence
   § 1077.

McMillan, Nancy Avery Follansbee, Clarence H. Shaver, and the Northern Trust Company, an Illinois banking corporation, of Chicago, Illinois, trustees under the last will and testament of Sewell L. Avery, deceased, against the J. L. Hudson Company, a Michigan corporation, to recover money due under a lease of real property. Defendant's motion for summary judgment granted. Plaintiffs appeal. Affirmed.

*Butzel, Levin, Winston & Quint (Henry H. Sills, of counsel)*, for plaintiff.

*Dykema, Wheat, Spencer, Goodnow & Trigg (Nathan B. Goodnow and John K. Cannon, of counsel)*, for defendant.

BEFORE: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. This appeal raises the question whether the trial court erred by granting defendant-appellee's motion for summary judgment pursuant to GCR 1963, 117.2(3). This rule provides for summary judgment where: "except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law."

Plaintiffs and defendant hold, as lessor and lessee respectively, successive interests in a 99-year lease of certain land situated in Detroit. The lease, which was executed in 1912, specifies the rental rates as: $7,500 per annum for the first year; then $8,500 for the period ending December 31, 1924; $12,000 per annum for the period ending June 30, 1937; $13,000 per annum for the period ending June 30, 1961; and $14,000 per annum thereafter. It further provides:

"All of which rents shall be payable in legal tender of the United States of America, of equal purchase power with the present monetary standard of the said United States of America provided that acceptance by said lessors at any time of any portion of the whole of said rent in any other money than said legal tender shall amount to the payment of the rental to the amount so paid but shall not be a waiver or release of the right of said lessors afterwards to insist upon and have all future payments of such rents made in such legal tender."

Plaintiffs brought this action to recover the difference between the base rental specified in the lease and the base rental adjusted to reflect the diminished purchasing power of the present dollar as contrasted to that of the 1912 dollar. The rental period covered by this suit extends from the dates adjustments were demanded[1] to the date this suit was commenced. Plaintiffs also seek a declaratory judgment as to future rent obligations.

Plaintiffs point to the first clause of the above-quoted provision as the basis for an increase in rent dollars. Plaintiffs would have it styled a "purchase power adjustment clause" which entitles them to the amounts specified in the lease adjusted to such extent as reflects the difference between the purchasing power of the dollar on the rent day and the purchasing power of the dollar as of the date of the lease. In other words, plaintiffs claim the lessor can demand a rent dollar which will purchase the same amount of goods and services as a 1912 dollar.

Defendant asserts that it is properly characterized as a "gold clause"; that is, the lessor is entitled to rent in legal tender of the same value as 1912 dollars as measured by the gold content of the latter. In its motion for summary judgment, defendant set

---

[1] Plaintiffs' demand of June 7, 1963, is the first to be made under the lease.

forth this construction and cited the joint resolution of Congress of June 5, 1933[2] (48 Stat 112, 31 USCA § 463) which renders unenforceable "provisions * * * which purport to give the obligee a right to require payment in gold * * * or in an amount in money of the United States measured thereby." The trial court construed the language in question to be a "gold clause", held that it fell within the ambit of the joint resolution, and ruled, therefore, that the defendant was entitled to judgment as a matter of law.

On appeal, the plaintiffs' principal contention is that the meaning of the clause is ambiguous, and that this ambiguity presents a material question of fact, thus making summary judgment improper.

Extrinsic evidence may be adduced to establish the intent of the parties to a contract evidenced by a writing if the meaning of the written language is obscure. 17 Am Jur 2d, Contracts § 77. "Absent ambiguity, the rights of the parties rest on the contract as written." *Topolewski* v. *Detroit Automobile Inter-Insurance Exchange* (1967), 6 Mich App 286. Does a reading of this clause result in uncertainty as to what is required in the payment of rental money?

---

[2] (a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law. [The principal case arising under this statute is *Holyoke Water Power Co.* v. *American Writing Co.* (1937), 300 US 324 (57 S Ct 485, 81 L Ed 678)].

The lease requires payment in "legal tender * * * of equal purchase power with the present monetary standard of the United States." The trial court sought to interpret this language by defining the operative terms and paraphrasing it accordingly. We do not differ with this technique.

As the trial court noted, the term "purchase power" is synonymous with the word "value" when used in reference to money. The "present monetary standard," *i.e.*, the monetary standard of the United States in 1912, was, as established by the gold standard act of March 14, 1900, (31 Stat 45), "the dollar, consisting of 25–8/10 grains of gold, 9/10 fine." The clause may thus be read as requiring payment of rent in legal tender, or dollars, having, when paid, equal value to dollars containing 25–8/10 grains of gold, 9/10 fine.

There are other factors which indicate the "purchase power," or value, is to be measured by the gold content of the 1912 dollar rather than by the amount of goods and services commanded by a 1912 dollar. The pleadings stated that no adjustment has been made (or even demanded until this suit) during the fifty-odd years of the lease's existence. Hence, plaintiffs' claim is inconsistent with the conduct of the parties and, more significantly, their predecessors in title. The absence of any adjustment to reflect increases or decreases in the cost of living tends to support the conclusion that the original parties firmly understood that only formal revaluation by change of the gold content would be cause for adjustment. At the same time, the lease makes no reference to price indexes as standards by which changes in cost of living can be computed; nor does it set forth the periodic frequency of adjustment required. While the provision for an absolute numerical increase in dollars is not incompat-

ible with a "purchase power adjustment clause," the increasing rates are listed without qualification.

We conclude from the foregoing analysis that the clause clearly requires payment in legal tender measured by the gold content of the 1912 dollar. There being no material issue of fact, the trial court properly proceeded to decide whether defendant was entitled to judgment as a matter of law. If plaintiffs seek an increase in rent dollars by reason of inflationary pressures, as they do, defendant's motion was proper, as the clause permits an increase only upon formal devaluation. If plaintiffs seek an increase by reason of formal devaluation of the dollar, defendant's motion was, again, proper as the joint resolution of June 5, 1933 renders "gold clauses" unenforceable. The order granting the motion for summary judgment is affirmed.

Costs to appellee.

All concurred.