The **EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff,**

v.

**Charles Niles GROSVENOR III, et al., Defendants.**

**No. C–75–168.**

United States District Court, W. D. Tennessee, W. D.

Oct. 27, 1976.

---

C. Thomas Cates, Burch, Porter & Johnson, Memphis, Tenn., for plaintiff.

Crawford McDonald, McDonald, Kuhn, Smith, Gandy, Miller & Tait, Henry M. Beaty, Jr., Memphis, Tenn., for defendants.

C. Niles Grosvenor, III, pro se.

## RULING ON MOTIONS FOR JUDGMENT

McRAE, District Judge.

Plaintiff, The Equitable Life Assurance Society of the United States (hereinafter called "Equitable" or "plaintiff"), filed its Complaint for a Declaratory Judgment herein seeking an adjudication of the rights of the parties under a certain written lease agreement. The particular controversy at issue relates to whether Equitable as lessee must pay rent to the defendants in the amount of $1,500 a month in currency of the United States or whether it must pay such rent in gold coins of the standard weight and fineness as of May 1, 1927, or the equivalent thereof in currency of the United States. Defendants have demanded payment of the $1,500 rental in currency equivalent to $1,500 in gold coin of the

standard weight and fineness as of May 1, 1927. According to defendants, $1,500 in gold coin of the standard weight and fineness as of May 1, 1927, equals 72.5625 troy ounces of fine gold. The rental demand for the month of January 1975 was for the sum of $13,469.63, or 72.5625 troy ounces of fine gold multiplied by $186.00, which was the price of one fine troy ounce of gold on January 2, 1975. This rental sum will change monthly as the market price of gold fluctuates.

Equitable seeks the Judgment of this Court that its obligation to pay rent is dischargeable by the payment each month of $1,500 in currency.

Jurisdiction is founded upon diversity of citizenship between Equitable and the defendants and the fact that the action arises under the laws of the United States concerning the monetary system of the United States. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

The defendants are all the parties who have an interest, either vested or in expectancy, in certain real property in Memphis, Tennessee, upon which a multi-story office building known as the Sterick Building is situated. All of the defendants are properly before the Court. Guardians *Ad Litem* have been appointed to represent unborn children who upon their birth would have an interest in the real estate involved herein, and to represent the defendants who are minors.

All of the defendants have filed Answers. All of the defendants except Memphis Bank & Trust Company, Trustee, have filed a Counter-Claim for Declaratory Judgment. An Answer to such Counter-Claim has been filed by Equitable. Simply stated, the Counter-Claim seeks a Declaratory Judgment that would have the opposite effect of the Declaratory Judgment sought by plaintiff.

Plaintiff filed a Motion for Judgment on the Pleadings based upon the allegation that there is no genuine issue as to any material fact as shown by the pleadings and plaintiff is entitled to a Judgment as a matter of law.

Subsequently a Motion for a Summary Judgment was filed in behalf of all the defendants. The case has been thoroughly briefed and an oral argument was presented on the respective Motions. The Court is of the opinion that there is not a disputed material issue of fact and that the case may be determined on the present record as a matter of law.

By lease dated May 1, 1927, the predecessors in title to the defendants of the land upon which the Sterick Building is situated leased such land to the predecessors in interest of the plaintiff herein. The original lessee and its successors in interest have constructed, and there is now maintained, improvements of substantial value upon the subject real estate. Section Two of said lease provides as follows:

TERM, RENTAL AND TAXES

TO HAVE AND TO HOLD the same for the full term of ninety-nine years, beginning on the first day of May, Nineteen Hundred and Twenty-Six (1926) and ending on the Thirtieth day of April, Two Thousand and Twenty-Five (2025) at noon, at which last mentioned date and time, the term hereby created shall be fully and absolutely completed and terminated. The said Lessee hereby agrees and covenants with the said Lessor to pay as and for the rent of the above described premises each year during the full ninety-nine years, being the full term of said lease, the sum of Eighteen Thousand ($18,000.00) Dollars per annum, without any deduction or abatement whatever, in equal monthly installments of Fifteen Hundred ($1,500.00) Dollars each, in advance, one monthly installment to be paid on the first day of each and every month of each and every year during the full term of this lease; <u>all of which rent and each monthly installment shall be paid by the Lessee to the Lessor in gold coin of the United States of America of the present (the date of the execution of this instrument) standard weight and fineness, or its equivalent to be determined at</u>

the time of the payment of each separate monthly installment of rent. (Emphasis supplied)

Plaintiff contends that the underlined provision of said Section Two, relative to payment in gold or its equivalent, was abrogated and made null and void when Congress enacted the law set out below by Joint Resolution of June 5, 1933, which law sometimes will be referred to hereinafter as the "Joint Resolution" and that said Joint Resolution remains in full force and effect to the present date:

### JOINT RESOLUTION

To assure uniform value to the coins and currencies of the United States.

Whereas the holding of or dealing in gold affect the public interest, and are therefore subject to proper regulation and restriction; and

Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount of money of the United States measured thereby, obstruct the power of the Congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts. Now, therefore, be it

Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect

thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of the Federal Reserve banks and national banking associations.

Plaintiff has paid monthly rent of $1,500 in currency since June 1973, when it succeeded to the interest of lessee under said lease. In ¶ 11 of the Answer, defendants state that such payment fulfilled plaintiff's obligation as lessee with regard to the payment of such rent for payments made prior to January 1, 1975, but not thereafter.

Plaintiff contends that the Joint Resolution is still in effect; that "gold clauses" are still against the public policy and of no effect; and that plaintiff is entitled to a Judgment or Decree of this Court that its obligations to pay rent under the subject lease are dischargeable by the payment of $1,500 per month in currency of the United States.

Public Law 93–110 (87 Stat. 352) and Public Law 93–373 (88 Stat. 445), both of which became effective December 31, 1974, and which are sometimes hereinafter referred to as the "Repealing Act," provide in relevant part:

Sec. 3(a) Sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. 442 and 443) are repealed.

(b) No provision of any law in effect on the date of enactment of this Act, and no rule, regulation, or order in effect on the date subsections (a) and (b) become effec-

tive may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad.

(c) The provisions of subsections (a) and (b) of this section shall take effect either on December 31, 1974, or at any time prior to such date that the President finds and reports to Congress that international monetary reform shall have proceeded to the point where elimination of regulations on private ownership of gold will not adversely affect the United States' international monetary position. Public Law 93–110 (87 Stat. 352) as to subsection (a) above and Public Law 93–373 (88 Stat. 445) as to subsections (b) and (c) above.

Simply stated, it is the position of the defendants that the above quoted statutes repealed the Joint Resolution.

The reasoning of the defendants is that subsection (a) of the Repealing Act expressly repealed sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. Sections 442 and 443), these being the laws which gave to the Secretary of the Treasury the authority to issue regulations prescribing conditions under which citizens could acquire, hold, transport, melt, treat, import, export or earmark gold for industrial, professional and/or artistic use (31 U.S.C. Section 442) and which provided heavy penalties for the violation of such regulations (31 U.S.C. Section 443). Until the Repealing Act was passed, ownership of gold except in accordance with the regulations of the Secretary of the Treasury was prohibited.

Defendants contend that if all Congress intended to do by enactment of the Repealing Act was to remove restrictions from citizens purchasing, holding, selling and dealing in gold as a commodity, that such could have been accomplished simply by specifically repealing 31 U.S.C. Sections 442 and 443; but defendants contend that it was also the intent of Congress to remove *every* restriction of any kind on citizens as related to gold, including the restriction on "gold clauses"; and that subparagraph (b) of the Repealing Act was a catchall which

repealed the Joint Resolution. Defendants assert that the legislative history of the Repealing Act supports their position that the Joint Resolution was repealed by such Act.

The Joint Resolution was held to be constitutional soon after its passage in *Norman v. Baltimore and O. R. Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935) and *Holyoke Water Power Company v. American Writing Paper Company, Inc.,* 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1936) as to private obligations and in *Nortz v. United States,* 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907 (1934) and *Perry v. United States,* 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1934) as to governmental obligations.

A primary issue in this case is whether the language of the Repealing Act repealed the Joint Resolution.

In order for a subsequent statute to repeal an earlier statute, the earlier one must either be expressly repealed or repealed by implication. A statute is expressly repealed when the later law designates the statute repealed in such manner as to leave no doubt as to what statute is intended.

Neither the Joint Resolution nor the codification thereof in 31 U.S.C. Section 463 is expressly mentioned in the Repealing Act. Only "Sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. 442 and 443)" were mentioned.

As the Joint Resolution was not expressly repealed, the issue is whether it was repealed by implication.

Defendants contend that subsection (b) of the Repealing Act was enacted to repeal the Joint Resolution or otherwise there would have been no reason for its insertion in the Repealing Act. Defendants argue that Congress, by expressly repealing Sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. Sections 442 and 443), removed all restrictions upon private citizens dealing with gold except those contained in the Joint Resolution. In other words, defendants say that except for 31 U.S.C. Sections 442 and 443 there were no other laws,

rules, regulations or orders in effect in 1974 that prohibited citizens from dealing with gold and thus Congress must have been directing subparagraph (b) of the Repealing Act at the Joint Resolution.

However, on the date of the Repealing Act there were in full force and effect other laws, rules, regulations and orders that prohibited or conditioned the rights of citizens of the United States with regard to gold; for example, Title 31 of the *Code of Federal Regulations,* Part 53, entitled "Instructions of the Secretary of the Treasury Concerning Wrongfully Withheld Gold Coin and Gold Bullion Delivered After January 17, 1934," and Part 54 thereof entitled and containing "Gold Regulations".

Merely expressly repealing Sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. Sections 442 and 443) would not have repealed these other pronouncements that had the force of law.

■ In considering whether earlier statutes are repealed by implication, this Court must be guided by the cardinal rule recently reiterated by the Supreme Court in *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); namely, that repeals by implication are not favored.

As the Court also stated in *Morton v. Mancari,* at page 551, 94 S.Ct. at page 2483:

The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible . . . .. The intention of the legislature to repeal 'must be clear and manifest.'" Citations omitted.

■ The principles expressed above, when applied to the case at bar, indicate that the Repealing Act did not impliedly repeal the Joint Resolution.

Congress only meant to remove restrictions upon United States citizens "purchasing, holding, selling or otherwise dealing

with gold" as a *commodity.* There is no showing that Congress specifically intended to repeal the Joint Resolution and allow obligations to be valued in gold.

The Joint Resolution did not prohibit the purchasing, holding, selling or otherwise dealing with gold. It only prohibited obligees from demanding payment of obligations in gold. Laws enacted prior to the Joint Resolution prohibited citizens generally from purchasing, holding, selling and dealing with gold.

■ The Repealing Act is a statute which was intended to again allow citizens to buy, sell, hold and deal with gold as a commodity but not to use it as an index of value to measure obligations. The two statutes are not irreconcilable. Citizens may now deal with gold as a commodity—buying, selling and holding it, contracting on futures and generally dealing with it as they would cotton or other commodities. However, Congress did not repeal the prohibition against its use as an index of value to measure obligations unrelated to their dealings in it.

The position of the defendants is that the words "or otherwise dealing with gold" as contained in the Repealing Act were meant to include such "dealing" as was prohibited by the Joint Resolution, i. e., using gold as an index of value to measure obligations; thus the Repealing Act was meant to repeal the Joint Resolution and again allow this type of "dealing".

There is a distinction between gold as a commodity and gold as an index of value. *Holyoke Water Power Company v. American Paper Writing Company, Inc.,* 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1936). The Joint Resolution prohibited the use of gold as an index of value.

The defendants assert a second theory, namely, that if the Court should decide that the first theory of plaintiff is correct and that the Joint Resolution was not impliedly repealed by the Repealing Act, then the Joint Resolution is unconstitutional in the light of the provisions of the Repealing Act which allow dealing in gold. Defendants say that to construe the Joint Resolution as

prohibiting the payment of rent in gold causes it to become unconstitutional, under either or both the Fifth and Tenth Amendments to the Constitution of the United States.

Defendants would reason that it was only because gold was prohibited to private citizens in 1933 and used as a monetary base or related to the monetary system that Congress could prohibit "gold clauses". However, the Joint Resolution was not upheld on this basis. *Norman v. Baltimore & Ohio Railroad Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935) is the leading case in this field. In the *Norman* opinion the Supreme Court discussed at some length the power of Congress to establish a monetary system as one basis for upholding the validity of the Joint Resolution. In that opinion the Court said:

> The Constitution "was designed to provide the same currency having a uniform legal value in all the States." It was for that reason that the power to regulate the value of money was conferred upon the Federal government, while the same power, as well as the power to emit bills of credit, was withdrawn from the States. . . . Or, as was stated in the *Juilliard* Case, supra, [*Juilliard v. Greenman,* 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204] the Congress is empowered "to issue the obligations of the United States in such form, and to impress upon them such qualities as currency for the payment of merchandise and the payment of debts, as accord with the usage of sovereign governments." The authority to impose requirements of uniformity and parity is an essential feature of this control of the currency. The Congress is authorized to provide "a sound and uniform currency for the country," and "to secure the benefit of it to the people by appropriate legislation." 294 U.S., pages 303–04, 55 S.Ct. at page 414.
> . . . It requires no acute analysis or profound economic inquiry to disclose the

dislocation of the domestic economy which would be caused by such a disparity of conditions in which, it is insisted, those debtors under gold clauses should be required to pay one dollar and sixty-nine cents in currency while respectively receiving their taxes, rates, charges, and prices on the basis of one dollar of that currency. 294 U.S., pages 315–16, 55 S.Ct. page 419.[1]

 The holding of the Supreme Court in *Norman* may be summarized as follows: (1) Congress has the right to establish the monetary system of this country and to establish a uniform currency; and (2) a valid reason for the Joint Resolution was to establish a uniform currency and parity between kinds of currency and to make that currency dollar for dollar, legal tender for the payment of all debts. Congress struck down gold clauses with the Joint Resolution because they interfered with its power to establish a uniform currency.

■ For the foregoing reasons this Court concludes that the Repealing Act of 1974 did not repeal the Joint Resolution of June 5, 1933. The basis upon which the United States Supreme Court held the Joint Resolution constitutional in 1934 still exists today in that Congress still has the power to insure that all obligations shall be paid in one uniform currency. There is no material fact in dispute in this case and the plaintiff is entitled to a Declaratory Judgment as a matter of law that its obligation to pay rent under the lease involved herein was, and in the future shall be, dischargeable by the payment of $1,500 per month in currency of the United States, which at the time of payment is legal tender. Wherefore the Clerk is hereby directed to enter a Judgment in favor of the plaintiff consistent with this ruling.

---

1.  In the instant case the disparity of conditions would require the plaintiff to pay rent for the month of January 1975 in the amount of $13,- 469.63 after receiving $1500 in currency from its charges and prices.