MOORE, Judge.
We are called upon to determine the applicability of a 1933 Joint Resolution of the Congress of the United States of America, codified at 31 U.S.C.A. § 463[1] to an escalation provision contained in a 99-year recreation lease executed in conjunction with the development of a condominium association and in the purchase of individual units. Appellants sought relief from the escalation provision which provided:
“(b) In the event that the United States dollar should ever be officially devalued by the United States government or replaced by a regular species of a lesser value, then and in that event the rental to be paid by the lessee to the lessor or any purchase price to the lessor by the lessee shall be increased in proportion to said devaluation so that the rental to be paid to the lessor or the purchase price of the property covered by this lease to be paid to the lessor shall be the same in terms of actual value as the United States dollar was on January 1, 1967.”
In essence, appellants contend in their class action complaint for declaratory judgment that the above escalation clause is proscribed by 31 U.S.C.A. § 463, commonly known as the “Gold Clause” Resolution. Having refused to file an amended complaint, after opportunity to do so had been provided, appellants complaint was dismissed with prejudice for failure to state a cause of action. This appeal followed.
It is the position of the appellees that the escalation provision is merely an indexing device used to preserve the lessor’s relative purchasing power on his investment, and that it has no relationship whatsoever to the “Gold Clause.” In their brief they state, “The only standard to which the rent is to be adjusted is the actual (or purchas *809 ing) value of the United States dollar on January 1, 1967. It is to be measured by the amount of goods and services commanded by a 1967 dollar.” We seriously doubt that the effect of an increase in rent based upon an official devaluation of the United States dollar will produce the anticipated result. Nevertheless, the standard by which the rent is to be adjusted under the escalation provision is not the actual or purchasing value of the dollar on January 1, 1967 but, rather, solely the percentage by which the United States government may officially devalue the dollar. The question remains whether or not the “Gold Clause” is, or could be, applicable to the challenged provision. If so, the complaint stated a cause of action and it was error to dismiss it.
Numerous similar, but factually distinguishable, cases have interpreted the “Gold Clause.” Norman v. Baltimore and Ohio Railroad, Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); Holyoke Water Power Co. v. American Writing Paper Co., Inc., 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1937); Guaranty Trust of New York v. Henwood, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1939); Avery v. J. L. Hudson Company, 169 N.W.2d 666 (Mich.Ct. of App. 1969); Aztec Properties, Inc. v. Union Planters National Bank of Memphis, 530 S.W.2d 756 (Tenn. 1975); Equitable Life Assurance Society of the United States v. Grosvenor, 426 F.Supp. 67 (W.D. Tenn. 1976). It would serve no useful purpose to review those opinions. Suffice to say, the leading ease in this area is Norman, supra, the holdings of which were summarized by the Equitable Life Court as follows:
“(1) Congress has the right to establish the monetary system of this country and to establish a uniform currency; and (2) a valid reason for the Joint Resolution was to establish a uniform currency and parity between kinds of currency and to make that currency dollar for dollar, legal tender for the payment of all debts. Congress struck down gold clauses with the Joint Resolution because they interfered with its power to establish a uniform currency.” 426 F.Supp. at 73
Devaluation of currency is an economic tool utilized by governments in the complicated mechanisms of international monetary policies. One noted author defines devaluation as occurring when gold officially goes up in price relative to a specific currency, as from $21.00 an ounce to $35.00 an ounce. Samuelson, Economics, pg. 627 (8th Edition, 1970). If this definition is a currently proper one and if it is that which was contemplated by the parties to the escalation clause involved herein, then the increase in future rental payments would be based upon an amount of money measured by gold, or by a particular kind of coin or currency, to wit: a currency based upon the amount of gold that that currency will purchase.
We are unable to find any cases dealing with the specific provision here involved; however, the Supreme Court of Tennessee in Aztec, supra, determined that a provision for repayment of a loan “in constant United States dollars adjusted for inflation (deflation)” was violative of the Joint Resolution of Congress of June 5, 1933. In striking down that provision, the Tennessee Supreme Court recognized the legitimacy of indexing in modern business transactions and limited its holding to a prohibition against indexing the principal of a promissory note. Aztec, supra, at 761.
The appellants have alleged in their complaint that the escalation clause contained in their lease violates the Joint Resolution of Congress of June 5, 1933. Whether that clause is one which, by definition and in the contemplation of the parties, (1) requires payment in gold, or (2) requires payment in a particular kind of coin or currency, or (3) requires payment in money of the United States measured by gold or by a particular kind of coin or currency can only be determined upon appropriate proof and appellants should have the opportunity to present that proof.
We, therefore, hold that it was error to dismiss the complaint for failure to state a *810 cause of action and, accordingly, REVERSE the decision of the trial court and REMAND this cause for further proceedings consistent herewith.
REVERSED and REMANDED.
CROSS and ANSTEAD, JJ., concur.

. 31 U.S.C.A. § 463
“(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.
(b) As used in this section, the term ‘obligation’ means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term ‘coin or currency’ means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.”