407 So.2d 971 (1981)
REC CENTERS, INC. and Burnrose Corporation, Appellants,
v.
James J. SHAUGHNESSY, et al., Appellees.
No. 80-584.
District Court of Appeal of Florida, Fourth District.
December 14, 1981.
Rehearing Denied January 14, 1982.
*972 Eugene L. Heinrich of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellants.
Alan S. Becker of Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for appellees.
PER CURIAM.
The lessors of a recreation lease, the defendants below, appeal from a final judgment in favor of the plaintiff class of condominium unit owners, the lessees. We affirm in part and reverse in part.
The lease in question is a 99 year lease of recreation center property at Park South Condominium in Broward County. All of the condominium unit owners are required to be lessees under the lease. Paragraph 4(b) of the lease provides:
(b) In the event that the United States Dollar should ever be officially devalued by the United States Government or replaced by a regular specie of a lesser value, then and in that event the rental to be paid by the Lessee to the Lessor or any purchase price to be paid to the Lessor by the Lessee shall be increased in proportion to said devaluation so that the rental to be paid to the Lessor or the purchase price of the property covered by this lease to be paid to the Lessor shall be the same in terms of actual value as the United States Dollar was on January 1, 1967.
In 1973, the Congress officially devalued the dollar and the lessor correspondingly increased the amount of rent, effective December 1, 1973. This increased each lessee's rental obligation by various amounts ranging between $2.00 and $3.00 per month. The lessees brought a class action in March, 1976, seeking declaratory and monetary relief against the lessors for the purportedly wrongful increase of rental payments. Specifically, they alleged that paragraph 4(b), supra, violates the "Gold Clause Resolution" passed by Congress in 1933.[1] That resolution states in pertinent part:

*973 (a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.
(b) As used in this section, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.
31 U.S.C.A. § 463 (1976).
The lessor, Rec Centers, Inc., moved to dismiss the complaint, and upon the failure of the lessees to amend the complaint, the trial court entered a final order of dismissal on September 27, 1976. This court reversed that order stating:
It is the position of the appellees that the escalation provision is merely an indexing device used to preserve the lessor's relative purchasing power on his investment, and that it has no relationship whatsoever to the "Gold Clause." In their brief they state, "The only standard to which the rent is to be adjusted is the actual (or purchasing) value of the United States dollar on January 1, 1967. It is to be measured by the amount of goods and services commanded by a 1967 dollar." We seriously doubt that the effect of an increase in rent based upon an official devaluation of the United States dollar will produce the anticipated result. Nevertheless, the standard by which the rent is to be adjusted under the escalation provision is not the actual or purchasing value of the dollar on January 1, 1967 but, rather, solely the percentage by which the United States government may officially devalue the dollar. The question remains whether or not the "Gold Clause" is, or could be, applicable to the challenged provision. If so, the complaint stated a cause of action and it was error to dismiss it.
... .
Devaluation of currency is an economic tool utilized by governments in the complicated mechanisms of international monetary policies. One noted author defines devaluation as occurring when gold officially goes up in price relative to a specific currency, as from $21.00 an ounce to $35.00 an ounce. Samuelson, Economics, pg. 627 (8th Edition, 1970). If this definition is a currently proper one and if it is that which was contemplated by the parties to the escalation clause involved herein, then the increase in future rental payments would be based upon an amount of money measured by gold, or by a particular kind of coin or currency, to wit: a currency based upon the amount of gold that that currency will purchase.
... .
The appellants have alleged in their complaint that the escalation clause contained in their lease violates the Joint Resolution of Congress of June 5, 1933. Whether that clause is one which, by definition and in the contemplation of the parties, (1) requires payment in gold, or (2) requires payment in a particular kind of coin or currency, or (3) requires payment in money of the United States measured by gold or by a particular kind of coin or currency can only be determined upon appropriate proof and appellants *974 should have the opportunity to present that proof.
Shaughnessy v. Rec Centers, Inc., 361 So.2d 807, 808-809 (Fla. 4th DCA 1978).
The case eventually proceeded to non-jury trial. The court heard expert testimony of four economists. Three economists testified on behalf of the lessors and one on behalf of the plaintiff-lessees. Although the experts expressed some disagreement concerning the definition and identifiable characteristics of a "gold clause," all were in substantial agreement as to the meaning of "official devaluation of the dollar." Essentially, the economists testified that regardless of the actual, market value of gold, official devaluation occurs when the United States Government assigns an increased value to the official price of gold in terms of United States dollars.
The pleadings, stipulated facts and extensive testimony indicated that the official devaluation of the United States dollar is the only event which can trigger a rent increase under paragraph 4(b) of the lease. Accordingly, the trial court made the following findings:
1. Official devaluation of the United States dollar is the only way rent can be increased under the lease, and the actions of the lessors in raising rent in response to the official devaluation in 1973 supports the conclusion that such was the contemplation of the parties; and
2. The definition of official devaluation given by the Fourth District ("gold officially goes up in price relative to a specific currency") is a currently proper one.
Therefore, it follows that Paragraph 4(b) of the Lease calls for increases in future rentals based upon an amount of money measured by gold and is a prohibited "gold clause" violative of the Joint Resolution.
Consequently, the trial court entered a final judgment in favor of the lessees which declares paragraph 4(b) of the lease agreement to be "null, void and unenforceable," awards monetary relief, and enjoins the collection of further rents under that provision of the lease.
We affirm this portion of the trial court's order. The lessees presented the appropriate proof according to our decision in Shaughnessy v. Rec Centers, Inc., supra, that the parties intended that paragraph 4(b) authorize an increase in rental payments upon official devaluation of the United States dollar and that official devaluation is based on the official value of gold. The lease, therefore, requires payment of the rental obligations in an amount of dollars that is measured by gold. The "Gold Clause Resolution" prohibits such a provision.[2]
The final judgment further provides that the monetary relief awarded to the plaintiff class be held in trust for the benefit of all past and present condominium unit owners and, after payment of costs and attorneys fees, the remainder of the monetary fund be disbursed to each past or present unit owner in the amount of money they overpaid during the time that they owned their units. The judgment also states that any money undisbursed after a reasonable length of time, upon appropriate motion, is to be returned to the defendants, the lessors.
*975 The lessors contend that the trial court improperly computed the damages. The plaintiff class consists of "all present unit owners" of the condominiums. The amount of damages, however, was computed on the basis that all of the present unit owners were owners since December, 1973, the time of the increase in rent. Many of the present owners acquired their units after December, 1973. In essence, the judgment, therefore, awards relief for overpayment by past unit owners. These past unit owners, however, are not members of the plaintiff class.
The lessors also question the propriety of creating a general damages fund by setting a money judgment as a maximum figure and then providing that if the maximum is not found due, the balance would be returned to the judgment debtor. The issue of whether a trial court may create a general damages fund for the purpose of reimbursing members of a plaintiff class has only recently been addressed by a Florida court in Holley v. City of Naples, 371 So.2d 501 (Fla. 2d DCA 1979). In that case, the plaintiff brought a class action on behalf of himself and all other persons who had been issued illegal parking tickets since January 1, 1973. The trial court found that the plaintiff, Mr. Holley, was entitled to recover monetary damages and that the class action was proper. The trial court, however, denied generalized monetary relief to the class because the members of the class were unascertainable. The Second District Court of Appeal reversed, stating:
This case appears to be of first impression in Florida, but we are persuaded by the reasoning in Daar v. Yellow Cab Co., 67 Cal.2d 695, 63 Cal. Rptr. 724, 433 P.2d 732 (1967) that so long as the existence of an ascertainable class has been shown, there is no need to be able to identify the individual members of the class to determine the issues affecting the class. The trial court can determine the total amount of fines paid on the illegal parking citations and enter judgment. After judgment each individual member of the class must prove his or her identity and the amount paid on the illegal parking citation in order to recover.
Applying the reasoning of Holley to the present case, it appears that the trial court acted properly in attempting to create a damages fund equal to the total amount of improper assessments paid by the plaintiff class. The problem, however, is that the trial court failed in its attempt by compelling the lessors to place certain amounts in the damages fund which were not properly recoverable by any member of the plaintiff class. Some of the former unit owners who paid overassessments, which were included in the computation of damages, are not members of the plaintiff class. Thus, at least a portion of the damages fund is noncollectible by anyone in the present class.[3]
By examining the lessors' records of rental payments and totalling only those increased rents paid by the members of the plaintiff class, a more accurate computation of the total possible damages could have been made. Accordingly, we remand this aspect of the final judgment to the trial court for a proper computation of the damages fund based only on the amount of improper assessments paid by members of the plaintiff class. Each member of the plaintiff class then has the burden of coming forward and demonstrating the amount of his or her unlawful rental payment.
The lessors also contend that the final judgment improperly requires the lessors to pay attorneys fees without any statutory or contractual authority for such an award against the lessors. This issue is not ripe for review by this court. The final judgment explicitly reserves jurisdiction to determine at a later time the source and amount of attorneys fees. We, therefore, cannot consider this question until the trial court enters a ruling.
As to the other issues raised by the lessors and discussed above, however, we affirm *976 in part, reverse in part, and remand for further proceedings consistent with this opinion.
AFFIRMED in part; REVERSED AND REMANDED in part.
MOORE and HURLEY, JJ., and SHARP, G. KENDALL, Associate Judge, concur.
NOTES
[1] Section 4(c) of Public Law 95-147, 91 Stat. 1227 of October 28, 1977, provides that the "Gold Clause Resolution" shall not apply to obligations issued on or after October 28, 1977. The obligation here was created prior to October 28, 1977.
[2] See the following cases cited in Shaughnessy v. Rec Centers, Inc., supra, for a general discussion explaining the rationale of the "Gold Clause Resolution":

Norman v. Baltimore and Ohio Railroad, Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); Holyoke Water Power Co. v. American Writing Paper Co., Inc., 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1937); Guaranty Trust Co. of New York v. Henwood, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1939); Avery v. J.L. Hudson Company, 17 Mich. App. 491, 169 N.W.2d 666 (1969); Aztec Properties, Inc. v. Union Planters National Bank of Memphis, 530 S.W.2d 756 (Tenn. 1975), cert. denied, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); Equitable Life Assurance Society of the United States v. Grosvenor, 426 F. Supp. 67 (W.D.Tenn. 1976), affirmed, 582 F.2d 1279 (6th Cir. 1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).
The reasoning of these cases, although factually distinguishable, has aided this court in applying 31 U.S.C.A. § 463 to the present case.
[3] The lessees' argument that members of the plaintiff class were entitled to recover overassessments paid by their predecessor unit owners on an "assignment of lease" theory is without merit.