The GOLD BONDHOLDERS PROTEC-
TIVE COUNCIL, INC.

v.

The UNITED STATES.

No. 258–81C.

United States Court of Claims.

April 7, 1982.

Before, FRIEDMAN, Chief Judge, CO-WEN, Senior Judge, and KASHIWA, Judge.

COWEN, Senior Judge:

In this unusual case, we are required to determine the impact on plaintiff's claim of Chief Justice Charles Evans Hughes' historic opinion in one of the Gold Clause decisions:[1] *Perry v. United States*, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935).

Plaintiff, a Delaware corporation, is the owner of a $50 4¼% Gold Liberty Bond of 1933–38, which was issued October 24, 1918. The bond provided that the United States would pay the principal and interest in gold coin "of the present standard of value" upon presentation by the bearer to the Treasurer of the United States on or after October 15, 1938. On April 2, 1981, plaintiff's administrator presented the bond to the Treasury Department with a qualifying letter, demanding that the bond be returned to him in its present form unless payment was made either in gold coin or in United States currency having a face value sufficient to purchase gold coin equivalent to the value of the gold coin promised in the bond. By letter of April 14, 1981, the Treasury Department returned the bond to plaintiff's representative with the statement that his submission could not be treated as a presentation and surrender of the bond for payment because of the conditions which had been imposed. Thereafter, plaintiff filed this suit to recover the sum of $1,253.02 on its $50 bond, since gold was selling on the open market for approximately $518 an ounce on the date the bond was presented for payment.

The case is before the court on cross motions for summary judgment[2], and the

Scott P. Crampton, Washington, D. C., attorney of record for plaintiff. Bogan & Freeland and James Dewey O'Brien, Washington, D. C., of counsel.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant. Adrian C. Hunte, Washington, D. C., was on the brief. Rochelle E. Stern, U. S. Dept. of the Treasury, Washington, D. C., of counsel.

---

1. "The Gold Clause decisions of February 18, 1935, have already taken their place among the great landmarks of American constitutional history. They have given a partial answer to some basic questions of constitutional law. * * *" 33 Mich.L.Rev. 647 (1935).

2. In order to dispose of all legal issues raised by the undisputed facts, we have considered matters outside the pleadings and have elected to treat defendant's motion to dismiss as a motion for summary judgment pursuant to Rule 38(c). Since we have given full considera-

facts are not in dispute. We hold that plaintiff's claim is barred by Section 2 of the Joint Resolution of August 27, 1935, 31 U.S.C. § 773b, and grant defendant's motion for summary judgment.

## I.

Section 4 of the Fourteenth Amendment to the Constitution provides that: "The validity of the public debt of the United States * * * shall not be questioned." Since the plaintiff is relying principally on Section 4 and the decision of the Supreme Court in *Perry*, we shall consider, in order, the events which led to the Supreme Court's decision, the holding in that case, and the subsequent congressional enactment which withdrew the consent of the United States to be sued upon any gold clause securities of the Government except where payment sought is not in excess of the nominal value in dollars of the securities, or when suit was commenced by January 1, 1936.

The Gold Clause Joint Resolution of June 5, 1933, 31 U.S.C. § 463, declared that gold clauses were against public policy; that the use of such gold clauses was thereafter prohibited; and that every obligation, whether already incurred or incurred in the future, was to be discharged upon payment dollar-for-dollar in any coin or currency which at the time of payment is legal tender for public or private debts.

In *Perry*, the plaintiff, the owner of a $10,000 Fourth Liberty Loan 4¼% Gold Bond which was payable in United States gold coin of "the present standard of value," presented it for payment with a demand for delivery of the quantity of gold represented by $10,000 in gold coin at the time the bond was issued, or in the alternative, for payment of $16,931.25 in legal tender currency. Upon the Government's refusal to pay more than $10,000 in legal tender currency, plaintiff brought suit in the Court of Claims for the $16,931.25.

The case was submitted on certified questions to the Supreme Court, which held that

the promise of the Government to pay the paper money equivalent of the gold coin specified could not be repudiated nor impaired by the Gold Clause Joint Resolution. The Court declared that the power of the Government to contract against subsequent repudiation or impairment of its obligation was derived by implication from its constitutional power to borrow money on the credit of the United States, pursuant to Article I, Section 8 of the Constitution. The decision was also based to some extent upon Section 4 of the Fourteenth Amendment.

However, the Court held that Perry could not recover for breach of contract, because he had suffered only nominal damages and the Court of Claims had no authority to entertain an action for nominal damages. This result was reached on the ground that by congressional enactments in 1933 and 1934, the United States had abandoned the gold standard, required private persons to surrender to the Government all gold held by them, and provided that the holder of gold coin could not export it or engage in transactions of foreign exchange.

Within 6 months after *Perry* was decided, Congress reacted by passage of the Joint Resolution of August 27, 1935. Section 2 thereof, which is codified as 31 U.S.C. § 773b, is still in effect and provides as follows:

§ 773b. Same; withdrawal of consent to sue United States; exceptions.

Any consent which the United States may have given to the assertion against it of any right, privilege, or power whether by way of suit, counterclaim, set-off, recoupment, or other affirmative action or defense in its own name or in the name of any of its officers, agents, agencies, or instrumentalities in any proceeding of any nature whatsoever (1) upon any gold-clause securities of the United States or for interest thereon, or (2) upon any coin of currency of the United States, or (3) upon any claim or demand arising out of

tion to plaintiff's motion for summary judgment, the order of November 24, 1981, suspending proceedings on its motion for summary judgment is vacated.

any surrender, requisition, seizure, or acquisition of any such coin or currency or of any gold or silver and involving the effect or validity of any change in the metallic content of the dollar or other regulation of the value of money, is withdrawn: *Provided,* That this section shall not apply to any suit commenced prior to August 27, 1935, or which may be commenced by January 1, 1936, or to any proceeding referred to in this section in which no claim is made for payment or credit in an amount in excess of the face or nominal value in dollars of the securities, coins, or currencies of the United States involved in such proceeding.

■ We agree with the Government that in this statute, consent to sue the United States on the gold clause contained in plaintiff's bond was withdrawn and that the plaintiff's claim is barred by the doctrine of sovereign immunity.

## II.

■ In an effort to overcome the difficult obstacle presented by 31 U.S.C. § 773b, plaintiff has advanced a number of contentions. Its principal argument is that the statute is an abrogation of Section 4 of the Fourteenth Amendment and that under the broad holding in *Perry,* plaintiff is entitled to recover the amount claimed.

Relying on *United States v. Klein,* 80 U.S. 128, 20 L.Ed. 519 (1871), plaintiff also asserts that the statute is an unconstitutional attempt to invade the judicial province and as such violates the separation of powers doctrine. We think that plaintiff has confused the holding in the *Klein* case with the long-established power of Congress to withdraw its consent to sue the United States. In an unbroken line of decisions, it has been held that Congress may withdraw its consent to sue the Government at any time. *Schillinger v. United States,* 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108 (1894); *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Maricopa County v. Valley National Bank,* 318

U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834 (1943); *Laycock v. United States,* 230 F.2d 848 (9th Cir. 1956).

It should be added that in *Perry,* both the majority opinion and the concurring opinion of Mr. Justice Stone recognized that neither Section 4 of the Fourteenth Amendment nor the implied obligation derived from the exercise of the sovereign power to borrow money on credit, affected the power of Congress to withdraw its consent to sue the United States. In the majority opinion, Chief Justice Hughes stated:

> * * * The fact that the United States may not be sued without its consent is a matter of procedure which does not affect the legal and binding character of its contracts. While the Congress is under no duty to provide remedies through the courts, the contractual obligation still exists and, despite infirmities of procedure, remains binding upon the conscience of the sovereign. *Lynch v. United States, supra,* 292 U.S. at pp. 580, 582, 54 S.Ct. at p. 844 [294 U.S. at 354, 54 S.Ct. at 436.]

Even more explicit was the following statement in the concurring opinion of Mr. Justice Stone:

> There is no occasion now to resolve doubts, which I entertain, with respect to these questions. At present they are academic. Concededly they may be transferred wholly to the realm of speculation by the exercise of the undoubted power of the Government to withdraw the privilege of suit upon its gold clause obligations. * * * [294 U.S. at 360, 55 S.Ct. at 439.]

## III.

■ Plaintiff's next contention is that the Government's violation of its agreement to redeem its bond in gold constitutes a taking of its property right, and therefore, that the Fifth Amendment prohibits the application of section 773b in this case. This argument is also rejected, because the Supreme Court ruled directly to the contrary in its landmark decision in *Lynch v. United States, supra.* There the Court recognized that: "Rights against the United

States arising out of a contract with it are protected by the Fifth Amendment." 292 U.S. at 579, 54 S.Ct. at 843. However, the Court went on to hold that:

> Although consent to sue was thus given when the policy issued, Congress retained power to withdraw the consent at any time. For consent to sue the United States is a privilege accorded; not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. * * * [292 U.S. at 581, 54 S.Ct. at 844.]

### IV.

■ Plaintiff also relies on the fact that since December 31, 1974, all United States citizens have been entitled to hold gold. In 1973 and 1974, Congress enacted two statutes which are sometimes referred to as the "Gold Ownership Amendments." The first of these was Public Law 93–110, 87 Stat. 352, and the second was Public Law 93–373, 88 Stat. 445. Both amendments became effective December 31, 1974. As a result, the prohibitions on gold ownership were lifted by repealing sections 3 and 4 of the Gold Reserve Act and by further providing that no law, rule, regulation, or order "may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad."

It is not clear whether plaintiff contends that 31 U.S.C. § 773b is no longer applicable as a result of the passage of the Gold Ownership Amendments. However, to resolve any doubt about the matter, we hold that section 2 of the Joint Resolution of August 27, 1935 was not repealed, either expressly or by implication, by the 1973–74 statutes. No reference whatsoever was made to the Joint Resolution in either of the Gold Ownership Amendments, and it is clear that 31 U.S.C. § 773b was not expressly repealed. We find it is equally clear there is no implied repeal, and we base this conclusion on several recently decided cases between private parties involving obliga-

tions to make payment in gold or its equivalent. *Southern Capital Corp. v. Southern Pacific Co.,* 568 F.2d 590 (8th Cir. 1978); *Feldman v. Great Northern Ry. Co.,* 428 F.Supp. 979 (D.C.S.D.N.Y.1977); *Equitable Life Assurance Society of United States v. Grosvenor,* 426 F.Supp. 67 (D.C.W.D.Tenn. 1976), *aff'd* 582 F.2d 1279 (6th Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In each case, the court held that by enacting the Gold Ownership Amendments, Congress did not intend to supplant the Gold Clause Joint Resolution of June 5, 1933, 31 U.S.C. § 463, which specifically prohibited the use of gold as a medium or measure of payment of contractual obligations. It was also decided by each of the cited cases that the Gold Clause Joint Resolution was not repealed, either expressly or impliedly by the 1973–74 enactments. Although these cases involved the viability of 31 U.S.C. § 463, the rationale of the decisions is equally applicable to 31 U.S.C. § 773b. Consequently, we find that this Act is still in full force and effect.

### V.

Its suit may have added a footnote to history, but plaintiff has not demonstrated a right to recover on the basis of the gold clause contained in its bond. It follows, therefore, that defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied, and plaintiff's petition is dismissed.